The Chief Justice
delivered the opinion of the court.
Baker was indicted for the crime of larceny of five thousand oranges, of the value of sixty dollars, of the goods, chattels and property of William A. Cone, sheriff and ex-officio administrator of the estate of Philemon Whilite, deceased.
From the very inartificial manner in which the record is made up, it is somewhat difficult to ascertain what transpired at the trial. With some difficulty we have gathered from the record the following facts:
That Philemon Whilite died, leaving a widow and family residing on the land from which the oranges are supposed to have been stolen; that Cone is the acting administrator of the estate of the deceased; that this defendant resided on the place with the family and in charge of the place; that defendant claimed that the place was the homestead of the deceased in his lifetime, and of his family since his death, and that he gathered the oranges while so in charge; that he offered to prove these facts in order to show that the place and the oranges were not in the lawful custody, and therefore not of the goods and chattels of the administrator.
The court charged the jury that “you can take no notice of any rights accruing under the homestead or exemption laws of the State. There were no steps, according to the testimony, taken by the deceased parent to establish a homestead or to avail himself of the benefit of the exemption laws.”
And further the court charged that “in a charge of larceny the belief that the accused has a right to the property of another is no excuse for taking it, unless the testimony shows some reason therefor.”
I The Constitution of the State provides that a homestead to the extent of one hundred and sixty acres of land, * * * and the improvements on the real estate, sháll be exempt from forced sale under any process of law, * * * except for taxes, purchase-money, improvements, or labor thereon; and that this exemption shall accrue to the heirs of the party having enjoyed or taken the benefit of such exemption. (Consti., Art. IX.)
According to the scope of the charge on this subject, although the deceased, who, in his lifetime, was the owner of land on which he resided with his family, might have claimed its exemption from sale for debts, yet if he was never threatened with an execution or other process for an indebtedness, and took no steps to protect his homestead from such process, the homestead might pass into the hands of an administrator as assets for the payment of debts, and then the family for whose protection the exemption was expressly provided might be stripped of all means of subsistence. We cannot assent to this construction of the language or the intent of the homestead provisions of the Constituion.
Any one who has owned and occupied with his family the limited amount of'land and improvements mentioned has “ enjoyed” it as exempt from forced sale, whether he has or has not been threatened with executions or other *109 process, because the enjoyment of a homestead consists in the use and occupation of it with his family, according to the clear intent and purpose of the provision.
There can be no doubt as to the correctness of this position.
The statute which makes real estate assets in the hands of an administrator for-the payment of debts cannot, of course, refer to the homestead, because the constitutional provision exempting it from sale for ordinary debts, takes so much of the real estate out of the inventory of the assets and the administrator has no control of it. The heirs may demand the exemption, and what they claim to be the limits of the homestead, within the prescribed quantity, should be allowed and set apart as exempt from forced sale, because they are entitled to the same exemption as the ancestor had been.
That portion of the charge which instructed the jury to disregard “any rights accruing under the homestead or exemption laws of the State” was therefore erroneous.
II. As to that part of the charge that in an accusation of larceny, the belief of the accused that lie has a right to property which really belongs to another, “is no excuse for taking it unless the testimony shows some reason therefor,” the jury may have been led into error. *
In Bishop’s Cr. Law, Vol. 2, Sec. 851, the rule as collated from the best authorities is thus given: “In all cases where one in good faith takes another’s property under claim of title in himself; he is exempt from the charge of larceny, however puerile or mistaken the claim may in fact be. And the same is true where the taking is on behalf of another believed to be the true owner. Still, if the claim is dishonest, a mere pretence, it will not protect the taker.”
The gist' of the offence is the intent to deprive another of his property in a chattel, either for gain or out of wantonness or malice to deprive another of his right in the thing taken. This cannot be where the taker honestly believes the property is his own or that of another, and that he has a right to take possession of it for himself or for another for the protection of the latter.
III. A third error assigned is that the court did not sign and seal the special instructions asked for by counsel for defendant and give his views of the law thereon upon his refusal to give them.
It appears by the record that certain instructions were prayed in writing by defendant’s counsel to be given to the jury, and the judge merely indorsed the instructions asked for, “instructions denied,” without declaring to the jruy “in writing his ruling thereupon as presented and pronouncing the same to the jury as given or refused.” This is required by the act of 1877, (Oh. 2096,) nor did the judge affix his seal to such indorsement of refusal as is required by the same act. These omissions are fatal errors, without reference to the merits of the instructions prayed for. The act is mandatory.
The judgment and sentence of the court are reversed and a new trial granted.