DANIEL A. MILLER, AS EXECUTOR OF WILLIAM COX, DECEASED, APPELLANT, vs. LUCY C. FINEGAN, ET AL. APPELLEES.

1. A husband and wife living together constitute a "family," within the meaning of the word as used in the first section of the ninth or homestead article of the Constitution of 1868.

2. The third section of the same article provided that the exemption of the homestead from forced sale, granted by the first section, to the head of a family residing in this State, should accrue to his heirs; and under it the exemption from such liability for indebtedness of the head of the family passed on his death to whomsoever the title of the homestead descended by virtue of the statute of descents, and became incident to the inheritance of the land.

3. The term "heirs" in the third section includes an adult son, and an adult grandson, the son of a daughter deceased at the death of the head of the family, notwithstanding they were not at his death living at the home place.

4. Residence by the heirs on the homestead of the ancestor after his death, is not necessary to continue the exemption of it from his debts.

5. A creditor seeking so satisfy a judgment which he has recovered against the administratrix, out of the homestead of her intestate, who was the head of a family residing in this State, can claim no advantage from the fact that the wife has elected to take a child's part in lieu of dower. If by her election she forfeited her dower interest, the heirs took the entire homestead.

6. A judgment rendered against an administratrix on an indebtedness of her intestate not excepted from the exemption provisions of the homestead provisions of the Constitution of 1868, was not a lien on the homestead of the intestate who was the head of a family residing in this State. The title to the homestead descended at his death to his heirs, exempt from any liability for the indebtedness.

Appeal from the Circuit Court for Orange County.

The facts of the case are stated in the opinion.

*C. F. Akers* for Appellant.

*Foster & Gunby and J. F. Welborne* for Appellees.

RANEY, C. J.: The first question to be disposed of in this case is whether Joseph Finegan, the intestate, was at the time of his death, November 3, 1885, the "head of a

family residing in this State," within the meaning of the first section of the ninth article of the Constitution of 1868. That he and his wife were at the time occupying the land as a home, is not denied, and that husband and wife, living together, constitute a family within the spirit and intent of homestead legislation, whether it be in the form of organic or of more mutable law, is a sound and recognized proposition. Thompson on Homesteads and Exemptions, Sections 44, 46, 48; Kitchell vs. Burgwin, 21 Ill., 40, 45. Where the relation of husband and wife exists, their joint consent is essential, under our Constitution, to any voluntary alienation of the homestead, and the existence of such relation logically, if not necessarily, fills out the measure of the requirement of the Constitution for exemption of the land owned by the head of the family, and occupied by them as a home, from forced sale.

II.   Two of the complainants, J. Ford Finegan, and J. Finegan Paramore, are the heirs of the intestate, the former being his son, and the latter a grandson, and the child of a daughter, Mrs. Paramore. The son was not living with the father at the death of the latter, and whether or not the grandson was the record does not inform us. The son had attained his majority before such death; and the answer says that the grandson reached maturity before the filing of the bill, which, however, was nearly nineteen months subsequent to his grandfather's death. As it does not affirmatively appear that the grandson was at the intestate's death under twenty-one years of age, or that he was living with his grandfather at the homestead, we will, as the most favorable view that can be taken with reference to the argument of counsel for appellant, regard him as having been over the age of twenty-one, and as not one of those living at the homestead.

The complainants before us seeking an injunction against the sale of the homestead of the intestate, upon a judgment recovered since his death against his administratrix, are, then, his widow, a son and a grandson. The Constitution of 1868 provided that "a homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of an incorporated city or town owned by the head of a family residing in this State, together with one thousand dollars, worth of personal property, and the improvements on the real estate, shall be exempted from forced sale under any process of law, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists," * * * and the exemptions "shall accrue to the heirs of the party having enjoyed or taken the benefit of such exemption." * *

The indebtedness against which the exemption is claimed is a judgment recovered against the administratrix on a promissory note made by the intestate early in February, 1882.

The intestate enjoyed the benefit of the exemption ; it was not necessary to such enjoyment that there should have been an attempt to enforce the debt against the land, nor an actual setting apart of the homestead in the manner provided by the statute, nor that there should be any record thereof.

To those upon whom the statute throws the title by descent, the Constitution gives the right of exemption; or, in other words, the Constitution makes the exemption an incident to the inheritance, and thereby, in so far as the homestead or other exempt property is concerned, repeals the general law, governing in the case of other property, that the heir takes subject to the debts of the ancestor.

The rights of the complainants, whatever they may be,

— accrued under the Constitution of 1868 ; the indebtedness having been contracted, and the intestate having died prior to the adoption of the present organic law, which organic law, we may remark, expressly ordains, Section 3, Article X, that the exemptions allowed by the former Constitution, shall apply to all debts contracted and judgments rendered subsequent to its adoption, and prior to the adoption of the present Constitution.

It has been held, and must be regarded as settled by this Court, that a widow is not an "heir" of her husband, within the meaning of the ninth article of the Constitution of 1868, where children survive him. Wilson vs. Fridenburg, 19 Fla., 461, decided in June term, 1882 ; Brokaw vs. McDougall, 20 Fla., 213 ; Wilson vs. Fridenburg, 21 Fla., 386.

That the son and grandson are heirs, according to the statute of descents, cannot be denied, but it is urged that "heirs" means children, and that "children" means infants or persons under twenty-one years of age, not adults, and two sections of statutory law are invoked in support of this view. The first of these is Section 8, p. 531, McClellan's Digest, it being the fifth section of an act approved January 16, 1866. The previous provisions of the act exempted certain personal property, and every dwelling house and the lot upon which it stood in any city, town or village, when the owner or his family resided in the house, and the house and lot did not exceed the value of one thousand dollars, and to every farmer forty acres of land, five acres thereof being in cultivation or productive use, or so much of the forty acres as did not exceed the value of one thousand dollars. The section relied upon by counsel provided that the proprietor of such lands so exempted from execution, attachment and distress, should have power to dispose of the same by last will and testament ; and should the pro-

3

prietor of such land die intestate, then the same should de-
scend to his widow and minor children, and such ex-
emption continue through the widowhood of the widow,
and the minority of the children; and should the proprie-
tor leave neither widow or children, the property shall be
subject to his debts.

The other section invoked is Section 16, p. 533, McClel-
lan's Digest, the sixth section of the act approved June 23,
1869, entitled, "An act for setting apart a homestead and
personal property to be exempted from forced sale under
process of law."   The only part of it necessary to be given,
reads as follows : "Real and personal estate exempted from
forced sale under any process of law, shall likewise after
the death of the owner, being the head of the family, be ex-
empt from sale in all cases in which any widow or infant
children of the owner shall survive and claim such
exemption." *   *

The former of the above sections is, as is apparent, a part
of the homestead and exemption law, as regulated by stat-
ute in force here prior to the operation of the Constitution
of 1868, and it is clear to our minds that the ninth article
of that Constitution, by its exemption provisions as to real
and personal property, supplanted entirely all previous stat-
utory exemptions, at least as to indebtedness accruing sub-
sequent to the time when the Constitution became of force.
An immediate result of a comparison of the section of the
statute of 1866, with the exemption provisions of the Con-
stitution, is a perception of the absence from the latter of
any discrimination between minor and adult heirs, and of
any limitation upon the duration of the exemption from in-
debtedness after the death of the head of the family.   In
the statute the discrimination and limitation are express
and unmistakable; in the Constitution there is none, but the

"heirs" take the property with an express guaranty of an exemption which is unlimited. The absence from the Constitution of the distinction and the limitation to be found in the statute cannot be regarded as incidental or meaningless, but are clearly indicative of a purpose to do away with them.

Turning our attention to the above statute of June, 1869, we find that in the sections preceding the one set out above, it provides a mode of procedure by which a head of a family residing in this State may, either before or after a levy, designate or set apart his homestead, and for a survey of the same at the instance of a judgment creditor dissatisfied as to the quantity of land claimed as a homestead. The seventh and subsequent sections make provision for setting apart one thousand dollars worth of personal property when a levy has been made, and for a plaintiff in decree or judgment testing by bill in equity whether property claimed to be exempt as a homestead, is so.

It was not the purpose of the above statute of 1869 to amend the statute of descents, nor was such the effect of the language quoted from the sixth section. Adult children and grandchildren, the latter being the offspring of a child who has died before the common ancestor, are still the heirs of the deceased ancestor, and upon them the title of his real estate falls by inheritance, whether the land be impressed with the character of a homestead or not. The only meaning or effect that can be claimed for the quoted language of the section, if it is to be regarded other than an adoption of the same mode of procedure applicable in other cases for setting apart a homestead and personal property exempted from forced sale, is that it excludes from the benefit of the exemption any heir upon whom the title to the land may descend, who is not an infant child of the

ancestor or head of the family; either this, or that the adult heirs are excluded unless there be at the death of the ancestor also a widow or an infant child surviving him.

The language of the third section of the ninth article of the Constitution is that "the exemptions provided for in sections one and two, shall accrue to the heirs of the party having enjoyed or taken the benefit of such exemption." The meaning of this is that those who inherit the property shall take with it, and as incident to the inheritance, the same exemption from the debts of the deceased head of the family who owned it as he enjoyed at his death. This exemption is from liability for the debts of the ancestor, and it is given to whoever may be heirs without reference to whether they be infants or adults. No such condition is to be found in the Constitution, but according to its plain language and meaning, the heirs, if they be all adult, take the exemption with the land in the same way that infant heirs do ; and if some heirs are adult and some infant, the Constitution has provided that the title to the homestead vests in the former freed from liability for the ancestor's debts just as it does in the latter. Legislation seeking to make infancy a test among heirs of the right to the enjoyment of the exemption is hostile to the Constitution in that it adds a requirement for such enjoyment not to be found in that instrument. We are not required, nor do we mean to say that the Constitution inhibits all changes of the statute of descents, but in our opinion the purpose and effect of that instrument was that the exemption should follow the land or other property to whomsoever it might descend by inheritance, independent of the consideration of the age of such person or persons.

It may be said, however, that to permit adult heirs to enjoy the benefit of the exemption is inconsistent with the

general idea or purpose of a homestead, and that this is more prominently so when such adults have not lived under the home roof and been a part of the family it protects. The answer to this is found in the very provision of the Constitution that the exemption shall accrue to the heirs of the party having enjoyed it. That property which creditors could not take from the head of the family when he was living, they cannot take from his heirs after his death. This is what the Constitution plainly said to any one who might become a creditor. It required that a person should be an heir, and nothing else, to successfully claim the exemption against the debts of the ancestors, who, at his death, was the head of a family residing in this State; no residence upon the land or abiding with the parent or ancestor, was made a condition to such heirship or consequent right of exemption. Nor is the heirs' right of exemption from the ancestor's debts dependent upon a use by them of the land as a homestead. Reeves vs. Petty, 44 Texas, 249. Whatever the interest of the ancestor was in the land, it descends to and vests in the heir, whether it be a term of years, a fee simple, or other estate extending beyond the life of the ancestor. We have found no constitution or other homestead law like ours, nor any decision which, in view of the plain language of our instrument, justifies us in departing from the well known meaning of the terms used, and, by construction, formulating what, to our minds, might be a more reasonable homestead or exemption system.

We are aware the word "children" in a Texas statute providing that a homestead shall descend and be set apart to the widow and children, has been construed to include only such children as were minors, and not those who were adults. The word children, when used irrespective of par-

entage, may denote that class of persons under the age of twenty-one years, as distinguished from adults, but its ordinary meaning, with respect of parentage, is sons and daughters of whatever age, (see titles "Child Minority," "Majority," Abbott's Law Dictionary, Bouvier's Law Dictionary), and the Texas Court adopted the former meaning as more consistent with the purposes of homestead legislation, yet held that the estate vested in the infant children not merely during minority or infancy, or so long as they continued to occupy it as a homestead, but in fee and independent of a continuation of its use as a home. Reeves vs. Petty, 44 Texas, 249; Horn vs. Arnold, 52 Ibid, 161. The word "heirs" does not afford an opportunity for the construction thus given to "children" as between minors and adults.

III. It appears from the record before us that at the time the bill was filed to enjoin the sale by the Sheriff under the execution issued upon the judgment referred to, Mrs. Finegan had instituted against the son and grandson a proceeding for the partition of the homestead property, and that a decree had been made on February 3, 1887, appointing commissioners to divide the same between herself and them, and the commissioners reported the lands to be so situated that they could not be divided without great prejudice to the owners, and recommend a sale, and on the first of March a sale was ordered, and on the first day of August, in the same year, the property was sold to Mrs. Finegan and the sale was confirmed in the following September, and on the fourth day of October, the commissioner conveyed the land to her by a deed. The bill was filed on the 23d day of May, in the same year, and, as is apparent, the sale and proceedings consequent upon it were subsequent thereto. The decree of partition, that for the

sale, and the deed are the only parts of the partition proceeding before us, yet they give the information indicated above. It also appears that on the 26th day of January, 1886, a few days less than three months after the death of the intestate, Mrs. Finegan filed in the County Court of Orange county, an election to take a child's part in lieu of dower, " in and to all the real and personal property of which she was dowable, according to the true intendment of the law, as widow" of the intestate.

Upon these proceedings two positions are asserted by counsel for appellant. The first is that the widow having elected to take a child's part, that her interest in the estate is subject to the execution ; and the second is that the property having been sold and passed out of the heirs, it has thereby become subject to the lien of the judgment.

The answers to these propositions are apparent. To the first it may be well said that if the widow had no other interest in the homestead but dower, as was held in the Fridenburg and McDougall cases, supra, and her election to take a child's part was a surrender of her dower claim with its superiority to the rights of creditors, this did not affect the title of the heirs to the entire homestead discharged of her dower claim. Again, if she has successfully asserted, as she seems to have done by her partition suit, a claim to a one-third interest in this land as against the heirs, or with their consent. it is a matter of no concern to the appellant or other similar creditors. They are not injured, for the same land, if she had no interest in it, would go to the heirs exempt from the indebtedness.

As to the lien of the judgment, nothing is required to be said other than that before the judgment was rendered the title had descended to the heirs exempt from liability for the intestate's indebtedness, and the judgment against the

administratrix was never a lien upon it, even should we admit that a judgment against an administrator or administratrix is a lien upon any of the lands of an intestate.

The decree making the injunction perpetual is affirmed, and it will be ordered accordingly.