## JOHN SHULTZ SHRIVER ET AL.

### *vs.*

## MARTHA N. SHRIVER.

---

## MARTHA N. SHRIVER

### *vs.*

## JOHN SHULTZ SHRIVER ET AL.

*Testamentary law: "heirs," who are; widow not "heir" of deceased husband.*

Where one, to whom an estate for life was devised to take effect after the death of a life tenant, and then to his heirs, dies before the first life tenant, then, whether the estate devised to the second life tenant be considered as one that was vested but defeasible, or as merely contingent, the share he would have received becomes vested, by way of substitution or succession, in the persons to whom the will refers as his heirs.     p. 488

A widow is not, in a technical sense, an "heir" of her husband, as to his realty.     p. 489

The word "heir" is technically and literally applicable only to one who *inherits* real estate.     p. 489

The title of an heir originates at the death of the person from whom he inherits; he takes a fee by descent.     p. 489

The widow's dower attaches as an inchoate interest during her husband's life; it is a limited life estate.     p. 489

Where personal property was devised to remaindermen named, *"or to their heirs,"* and one of the parties died before a preceding life tenancy expired, it was: *Held,* that one-half of his share of such property should be distributed to his widow, as under the Statute of Distribution, there being no children or descendants of such legatee.     p. 492

*Decided January 14th, 1914.*

Two appeals from the Circuit Court of Baltimore City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The causes were argued together before BOYD, C. J., BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Willis & Willis,* for John Schultz Shriver *et al.*

*Frank Gosnell,* for Martha N. Shriver.

URNER, J., delivered the opinion of the Court.

The will of J. Alexander Shriver, of the City of Baltimore, after devising and bequeathing all of his estate to his wife, Olivia B. Shriver, during her life, or so long as she remained his widow, provided as follows:

"After the death of my wife or her marriage again, (upon the happening of the latter, I give and bequeath to her absolutely, such portion of my estate as would be her proper share thereof under the existing law of the State of Maryland,) then and thereupon I desire and direct all the remainder of all my property devised and bequeathed to her for life or widowhood, shall be divided equally among my heirs, namely: Alice S. Clendinen, Frederick, John Shultz, Clarence and Joseph Alexis, share and share alike, or to their heirs, should either have deceased at that time."

The testator died in 1891 survived by his wife and all the children named in the will. The estate, consisting of both real and personal property, passed to the widow under the provision in her favor and was held by her until her death, which occurred within the past year. During the life tenancy, Frederick Shriver, one of the sons mentioned in the will, died without issue but leaving a widow, Martha N. Shriver, who is now living, and the only question we are to consider is as to the nature and extent of her interests, if any,

in the portion of the estate to which her husband would have been entitled if he had lived until the period of distribution.

It was determined by the Court below that, according to the proper construction of the will, Frederick Shriver had a vested but defeasible interest in remainder in one-fifth of the estate, and that his interest was subject to be divested in the event of his death during the period of the life tenancy, and, as that contingency had happened, it was ruled that his share of the estate passed to his "heirs," who, in reference to the realty, were decreed to be those only who would have inherited that kind of property from the deceased remainderman, and with respect to the personalty were held to be those, including the widow, who would be entitled, under the statute of distributions, as in case of intestacy. In consequence of this decision the widow was excluded by the decree from any interest in the real property, but was awarded, under the statute, one-half of the personal estate which her husband would have received if he had survived. The widow objects to the decree because it does not recognize her claim of dower in the realty, and her husband's brothers and the children of his sister, Mrs. Clendinen, who also died before the life tenant, object to the admission of the widow to a share of the personalty. The two appeals in the case represent these conflicting theories.

Whether the qualified estate devised and bequeathed by the will to Frederick Shriver in remainder be regarded as vested though defeasible, or as merely contingent, there can be no question that, in view of his death before the termination of the preceding life tenancy, the share of the estate which he would have received has become vested, by way of substitution or succession, in the persons to whom the will refers as his "heirs." *Reiff* v. *Strite,* 54 Md. 298; *Straus* v. *Rost,* 67 Md. 465; *Engel* v. *Geiger,* 65 Md. 539.

The single inquiry we are to make, therefore, is as to the meaning and application of the term "heirs" as used in the clause of the will which provides for the ultimate vesting of the estate.

In regard to the question as to who are entitled to the *real estate* devised in remainder, we must hold, upon elementary principles, that the widow is not to be classed as an "heir" of her husband with respect to that species of property. The word "heir" is technically and literally applicable only to one who *inherits* real estate, and the widow's interest in her husband's lands is not thus acquired. The title of the heir originates at the death of the person from whom he inherits, while the widow's dower attaches as an inchoate interest during her husband's life. The heir takes the fee by descent, and the widow takes her limited life estate by virtue of the marriage. According to the settled meaning of the term at common law, an "heir" is one in whom the law vests the estate in the lands of the ancestor immediately upon his death. *Hoover* v. *Smith,* 96 Md. 395; 4 *Words and Phrases,* 3241; 21 *Cyc.* 411. When used to designate devisees of real estate, and when a different interpretation is not required by the context, the word "heirs" is confined to its primary significance and is applied exclusively to those who would *inherit the land* of the ancestor to whom reference is made for their identification. As the widow sustains no such relation to her husband's estate at common law, she is nowhere regarded as one of his heirs, except in jurisdictions where she has been included by statute among those to whom his lands pass by descent. *In re Raleigh's Estate,* 206 Pa. St. 451; *Lord* v. *Bourne,* 63 Me. 368; *Wells, Guardian,* v. *Moore,* 16 Mo. 478; *Miller* v. *Finegan,* 26 Fla. 29; *Blackman* v. *Wadsworth,* 65 Iowa, 80; *Weston* v. *Weston,* 38 Ohio St. 473; *Menard* v. *Campbell,* 180 Mich. 583; *Proctor* v. *Clark,* 154 Mass. 48; 40 *Cyc.* 1463. There is nothing in the will before us to enlarge the meaning of the word "heirs" as applied to the devisees of the testator's realty, and as the deceased remainderman was not himself given such an estate in the lands as could be subject to a right of dower in his widow, there is no ground upon which her claim to an interest in the real estate passing under the will can be sustained.

The question as to whether the widow is to be regarded as one of the "heirs," so far as the disposition of the *personal estate* is concerned, was properly determined by the Court below in accordance with a principle of construction which was stated in *Gordon* v. *Small,* 53 Md. 562. There was a declaration of trust, in that case, creating a life estate in a fund of six thousand dollars, with remainder to the issue of the life beneficiary, and in default of such issue, then to the "right heirs" of the donor. This provision differed from the present in the fact that the alternative remainder was given to the heirs by direct limitation and not by way of substitution. In reference to such a limitation it was said by the Court, through JUDGE ALVEY, to be clear that "the words 'right heirs' were not intended to have different meanings, according to the nature of the property in which the trust fund may have been invested. If a party limits an interest or estate in trust to his heir, or to the heir of another person, the proper sense and meaning of the word is not necessarily to be departed from because the subject of the donation or trust happens to be personal estate. It is perfectly competent to a party to give to his heir or heirs by that description alone, if it sufficiently designates the party or parties intended to take, any sum of money that the donor may think proper to give, or even the whole of his personal estate. It is simply a question as to what persons or class of persons were intended to be embraced by the description; and the rule of construction is, that the terms employed should be allowed their established legal signification, unless controlled by the context of the instrument." After citing and discussing several English decisions in support of the statement just quoted, the Court proceeded to say: "There are cases, certainly, and a considerable number of them, and of high authority, which hold that where the gift is to the heir or heirs by way of substitution for the original or preceding legatee or donee, as, for instance, where the gift is to 'A. or his heirs,' the word 'heirs' is construed as meaning the per-

sons who would be entitled to take the personal estate of A. in case of intestacy; that is to say, the word 'heirs' is held to mean those persons who would be entitled to the personal estate of A., the first donee or legatee, by virtue of the Statute of Distributions, if that person had died intestate, including therefore a widow, but not a husband" (under the statute then in force). "As examples of such cases, we may refer to *Vaux* v. *Henderson*, 1 J. & W. 388, and note; *Gittings* v. *McDermott*, 2 M. & K. 69; *Doody* v. *Higgins*, 2 K. & J. 729. But in this case the limitation of the estate is not by way of substitution, within the meaning of the authorities, but the terms *right heirs* are used simply to describe donees in remainder; and therefore the case falls directly within the principle laid down in the cases of *De Beauvoir* v. *De Beauvoir*, 3 H. L. Cases, 524; *Mounsey* v. *Blamire*, 4 Russ. 384, and *Smith* v. *Butcher*, 48 L. J. Ch. 136, to which we have already referred."

The theory of this distinction was applied in *Fabens* v. *Fabens*, 141 Mass. 399, where it was thus explained: "No general rule can be stated under which all the decisions can be classified. But in general, where there is a gift to a person or his heirs, the word 'heirs' denotes succession or substitution; the gift being primarily to the person named, or, if he is dead, then to his heirs in his place. In such cases, it has often been held that the word 'heirs' should be construed to mean the persons who would legally succeed to the property according to its nature or quality; and that the heirs at law would take the real estate, and the next of kin or persons entitled to inherit personalty would take the personal estate. Such were the cases, amongst others, of *Keay* v. *Boulton*, 25 L. R. Ch. Div. 212; *Wingfield* v. *Wingfield*, 9 L. R. Ch. Div. 658; *Vaux* v. *Henderson*, 1 Jac. & W. 388, and *Doody* v. *Higgins*, 9 Hare, App. XXXII. But where the gift is directly to the heirs of a person, as a substantive gift to them of something which their ancestor was in no event to take, this element of succession or substitution is

wanting, and the heirs take as the persons designated in the instrument to take in their own right; and in such cases the Courts have usually held that the word 'heirs' must receive the meaning which it bears at common law, as the persons entitled to succeed to real estate in case of intestacy."

The present case is plainly subject to the principle of the distinction and rule stated in the Maryland and Massachusetts decision to which we have referred and the English cases therein cited with approval. The limitation here is to the primary remaindermen "or to their heirs," and the element of substitution by way of legal succession is involved. When the term is thus employed in regard to a bequest of personalty, the question is not who would be the heirs at law, in a technical sense, of the person named, but who would be entitled to his personal estate upon the theory of his death without a will. Under our Statute of Distributions, the widow succeeds to one-half of her deceased and intestate husband's personalty, where, as in this case, there are no children or descendants, and she was properly allowed by the decree to share in the estate to that extent.

The cases cited in the briefs, and others which we have examined, disclose a wide difference of judicial opinion as to the scope and effect of the term "heirs" as applied to legatees or donees of personal estate, but the citations we have made are sufficient to illustrate and support the rule on the subject which has been recognized in this State, and which is precisely adapted to the special conditions of the case presented by this record.

> *Decree affirmed, as to each of the appeals, one-*
> *half of the costs, including the cost of printing*
> *the record, to be paid by the respective appel-*
> *lants.*