**J. Z. WINKLER v. DAVID NEILINGER, J. H. DAVIDSON.**

14 So. (2nd) 403                                     June Term, 1943
July 9, 1943                                          Division A

*Roland W. Granat,* for appellant.

*Meyer, Davis & Weiss,* for appellee.

*Melvin J. Richard,* for Intervenor, J. H. Davidson.

TERRELL, J.:

In June, 1941, J. Z. Winkler entered into contract with Lorraine Daniels Stohn and David Gordon Daniels to purchase certain property in Miami Beach for a consideration of $25,500 on which an escrow deposit of $2,550 was made with the First National Bank of Miami Beach. The transaction was negotiated by J. H. Davidson and the title was to be free and clear of all encumbrances.

A great many complications developed before the title was cleared. The property was the homestead of Oscar Daniels; the vendors were the children of Oscar Daniels and other children had claims against it which required $2,950.00 to clear and Winkler made an additional deposit of the latter amount for that purpose. After the lapse of many months, the title not having been cleared, Winkler became impatient and told Davidson that if the transaction could not be closed at once, he would like to have his money back and be released from further obligation to purchase.

Winkler left for the north about this time (July or August) and when he returned in November, Davidson advised him that he had a purchaser, David Neilinger, who would take the property off his hands and would pay $27,500 for it, $2000 more than Winkler had agreed to pay. Winkler thought he should have part of the latter sum to cover his expenses and interest on the money he had tied up in the trade many months. He accordingly entered into contract with Neilinger whereby he agreed to convey to him all his right, title, and interest in the property for $750 and a refund of the $2,550 placed in the bank as an escrow when the con-

tract to purchase was made with the Daniels heirs. Neilinger agreed to this and deposited $3300 in escrow with the Miami Beach First National Bank. He also agreed to pay Davidson a commission of $1,250.

Early in December, the attorneys for all parties to the transaction had a conference at which Winkler and Neilinger were notified that the title was clear and that the transaction was in condition to be closed. The attorneys for Neilinger however, insisted that the title was not clear and before it would be acceptable, it would be necessary for the heirs of Oscar Daniels to file a suit in equity for the purpose of having the property adjudicated to be the homestead of Oscar Daniels exempt from all claims against him or his estate except as provided in the Constitution of Florida.

Numerous conferences followed; Winkler completed his contract to purchase, secured title insurance and called on Neilinger to accept the title and comply with his contract. Depositions in re perpetuam were filed in the public records of Dade County wherein all creditors were served with notice but none of them appeared to question the title or the sale. Neilinger was so informed and again called on to comply with his contract and refusing Winkler brought this suit for specific performance to coerce performance and to restrain the First National Bank of Miami Beach from returning the escrow money to Neilinger. The bank by agreement of counsel deposited the escrow money in the registry of the court and was relieved from further connection with the litigation.

Davidson was on his petition permitted to intervene and become a party to the litigation. On final hearing, the chancellor held the title to be unmarketable, dismissed the bill of complaint, ordered the money held in the registry of the court turned over to Neilinger and required the plaintiff to pay the defendant interest on the money from the date it was placed in escrow. On petition to intervene, he gave judgment in favor of the petitioner for $500. The appeal is from both of these decrees.

The primary question presented is whether or not Winkler offered Neilinger a marketable title to the lands in question

when he called on him to comply with his contract to purchase.

We think this question must be answered in the affirmative. The defendant (appellee here) contends that the record does not in fact show the property to be homestead property, that parole evidence would be required to show this, and being so, to save trouble with creditors and remove all doubt as to marketability, a suit should be prosecuted to have it adjudicated as homestead property. No other objection to the title is interposed.

We think there is ample showing in the record that the property is homestead property and since this is the case, it is idle to contend that a suit must be brought to have it so adjudicated. Under Sections One and Two of Article Ten of the Constitution of Florida, the homestead acquires that status when occupied as such by the head of the family. It is exempt from forced sale to satisfy any levy or execution except as stated in the Constitution and it descends to the children as heirs of the deceased who take it with the same exemptions as those provided for the head of the family. Hutchinson Shoe Co. v. Turner, 100 Fla. 1120, 130 So. 623; Baker v. State of Florida, 17 Fla. 406; Miller v. Finegan, 26 Fla. 29, 7 So. 140.

A marketable title is one free from reasonable doubt in law or fact as to its validity. Walker v. Close, 98 Fla. 1103, 125 So. 521; Adams, v. Whittle, 101 Fla. 705, 135 So. 152. The title in question is equal to this test. We think it reasonably certain that it will not be called in question. We mean by this that there is ample showing in this record that it is homestead property subject to all exemptions provided in the Constitution. It may be that those who enjoy the sport of shadow boxing or tinkering with probabilities will attempt to secure a judgment against it but in so far as its homestead character is concerned, the record here galvanizes it from assault.

Since we hold that Winkler offered Neilinger a marketable title, it follows that he is entitled to the relief prayed for. It also follows that Davidson's right to commission on the sale must be determined by the terms of his contract with Winkler

so there was no proper basis for the petition to intervene and judgment on this point.

The judgment appealed from is reversed with directions to enter a final decree against Neilinger as prayed for in the bill.

Reversed.

BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.