**In re Georgia Mae SMITH, a/k/a Georgia Mae Green, Debtor.**

**Georgia Mae SMITH, Plaintiff,**

**v.**

**AMERICAN CONSUMER FINANCE CORPORATION, a Florida corporation, and Joan Thompson, Defendants.**

**Bankruptcy No. 81–555–BK–J–GP.
Adv. No. 81–258.**

United States Bankruptcy Court,
M. D. Florida,
Jacksonville Division.

June 30, 1982.

Sarah H. Bohr, Jacksonville, Fla., for plaintiff.

John H. Skinner, Jacksonville, Fla., for defendant.

## MEMORANDUM DECISION

GEORGE L. PROCTOR, Bankruptcy Judge.

The homestead of plaintiff GEORGIA MAE SMITH was sold on June 5, 1981, at a Sheriff's Sale to defendant JOAN THOMPSON pursuant to a Writ of Execution issued by defendant AMERICAN CONSUMER FINANCE CORPORATION (hereinafter AMERICAN CONSUMER). Plaintiff subsequently filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on July 31, 1981. She then filed this adversarial complaint in the bankruptcy proceeding against AMERICAN CONSUMER, JOAN THOMPSON and JAX–AM, INC., pursuant to § 522(h) of the Bankruptcy Code, 11 U.S.C. § 522(h)[1] and §§ 222.08 and 86.011, *Fla.Stat.* (1981)[2] seeking to avoid the transfer of her exempt real property and to set aside the levy and sale.

Defendant AMERICAN CONSUMER failed to respond to the complaint and a default was entered against it by this Court on October 5, 1981. Upon stipulation of the parties, defendant JAX–AM, INC. was dismissed as a party on January 13, 1982.

The remaining two parties, plaintiff and defendant JOAN THOMPSON (hereinafter defendant), filed cross-motions for summary judgment, supporting memoranda of law and responses to the other parties' respective motions. Oral argument was held on January 13, 1982, and plaintiff and defend-

---

1. All further statutory references are to the Bankruptcy Code unless otherwise stated.

2. The date of all Florida Statutes cited is 1981 unless otherwise stated.

ant thereafter filed a Statement of Stipulated Facts.

The pertinent facts of this case, as stipulated to by the parties, are as follows:

1. Plaintiff purchased the home in dispute on January 11, 1972, for the sum of $11,687.12.

2. Plaintiff's original mortgage was dated March 14, 1969, in the amount of $11,050.00 with interest at the rate of 7½% and was for a term of 30 years.

3. The approximate value of the property at the time of the filing of the bankruptcy petition herein on July 31, 1981, was $19,100.00 as assessed by the Property Appraiser's Office of Duval County, Florida.

4. The approximate balance owed on the mortgage on the property to Tucker Brothers, Inc., at the time of the filing of the bankruptcy petition herein was $9,000.00.

5. On March 4, 1977, defendant AMERICAN CONSUMER obtained a Final Judgment against plaintiff and her husband, Eugene Smith, in the amount of $880.93 in the County Court, in and for Duval County, Florida. *See American Consumer Finance Corp. v. Eugene Smith and Georgia Smith*, Case No. 76–14865–SP, as recorded in volume 4340, page 159, of the Official Records of Duval County, Florida.

6. A certified copy of this Final Judgment was recorded in the Duval County Official Records on February 27, 1981, and appears at volume 5289, page 494, of the Official Records of Duval County, Florida.

7. On February 27, 1981, and at all times subsequent thereto, plaintiff has been separated from her husband, is supported by Aid to Families with Dependent Children, and resides with her minor child, Eugene Green.

8. On February 27, 1981, and at all times subsequent thereto, plaintiff and her child have lived in the house located at 2617 Olustee Street, Jacksonville, Florida, and legally described as follows:

Lot 11, Block 70, Grand Park, according to plat thereof recorded in Plat Book 2, pages 59 and 60 of the Current Public Records of Duval County, Florida.

9. On or about February 13, 1981, defendant AMERICAN CONSUMER instructed the Sheriff of Duval County to levy and sell the real property owned by the plaintiff.

10. On June 5, 1981, the Sheriff of Duval County offered plaintiff's home for sale pursuant to the levy previously executed by defendant AMERICAN CONSUMER.

11. At this Sheriff's sale defendant was the highest bidder and during the week of June 15, 1981, the Sheriff conveyed plaintiff's property to defendant.

12. Defendant paid $1,212.77 for plaintiff's home and is the sole owner of said property at present.

13. Defendant paid the monthly mortgage payments to Tucker Brothers from July 31, 1981 until April 9, 1982, totalling $952.31, and paid the homeowner's insurance premium to State Farm Insurance on July 31, 1981, in the amount of $78.00.

### CONCLUSIONS OF LAW

I. PLAINTIFF'S HOMESTEAD IS EXEMPT IN THE BANKRUPTCY PROCEEDING

Plaintiff has claimed her homestead real property to be exempt property on Schedule B–4 of her bankruptcy petition filed herein. This exemption is claimed pursuant to Article X, § 4(a)(1) of the *Florida Constitution*.[3] Defendant argues that

---

**3.** Because the State of Florida rejected the bankruptcy exemptions found at § 522(d) pursuant to § 522(b)(1), *see* § 222.20, *Fla.Stat.*, Florida debtors are only entitled to exempt property as provided by § 522(b)(2). This provision allows debtors to exempt property including that which would be exempt under state or local law. In Florida, Art. X, § 4(a)(1),

*Fla.Const.* is one exemption available to debtors and states in pertinent part:
There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or oth-

the plaintiff is prevented from claiming her homestead as exempt because she never filed an affidavit of exemption pursuant to § 222.02, *Fla.Stat.*[4], prior to the levy of her property by defendant AMERICAN CONSUMER. The Court concludes that plaintiff is entitled to exempt her homestead in this bankruptcy proceeding because § 222.-02, *Fla.Stat.* does not provide the exclusive remedy for assertion of constitutional real property exemption rights under Florida law and because her failure to comply with said statute does not deprive her of the Florida homestead exemptions.

The Florida Supreme Court has long recognized that the homestead exemption provisions of the constitution are operative notwithstanding the failure to resort to the statutory method of defining and placing on record the description of the property. *See, Baker v. State*, 17 Fla. 406 (Fla.1879); *Albritton v. Scott*, 73 Fla. 856, 74 So. 975 (Fla.1917); *Fidelity & Casualty Co. of New York v. Magwood*, 107 Fla. 208, 145 So. 67 (Fla.1932). This policy was first enunciated by the Florida Supreme Court in *Baker v. State, supra*, where it held that the constitutional homestead exemption applied to heirs notwithstanding the fact that the deceased head of family had failed to comply with the statutory method of defining and placing on record the description of the property he intended to claim as his homestead. *Cf. Hutchinson Shoe Co. v. Turner*, 100 Fla. 1120, 130 So. 623, 624 (Fla.1930).

The Florida Supreme Court subsequently held in 1917 in *Albritton v. State, supra*:

When a homestead to which the exemption from forced sale is sold in violation of the exemption rights conferred by the Constitution, such sale is void. *A mere failure to resist the sale is not a waiver of the exemption rights* (emphasis supplied). *Id.* 74 So. at 975. This decision was followed by the Second District Court of Appeals of Florida in *White v. Posick*, 150 So.2d 263 (Fla.2d DCA 1963). In *White*, property was levied on and sold at a public auction. This property was never claimed to be exempt until ejectment proceedings were subsequently brought. The Court, relying on *Albritton v. Scott, supra*, held that the defendant had not waived his defense of homestead by failing to assert it earlier.

The Florida Supreme Court reiterated its position that homestead rights cannot be waived in *Fidelity & Casualty Co. of New York v. Magwood, supra*. In *Fidelity & Casualty*, the Florida Court allowed a homestead claim to be asserted despite the fact that it was never raised in a prior proceeding involving the same parties resulting in an order to sell the property to satisfy a judgment:

It is true that the appellee here could have interposed his claim of homestead exemption in that suit but having failed to interpose it there, he is not precluded from exercising his constitutional right to contest his ouster from homestead. *Where a homestead has been acquired it can be waived only by abandonment or by alienation in the manner provided by law* (emphasis supplied).

*Id.* 145 So. at 68.

In support of her position that plaintiff has waived her right to claim her homestead as exempt, defendant cites the recent case decided by the Florida Supreme Court, *Johns v. May*, 402 So.2d 1166 (Fla.1981). *Johns* involved a constitutional challenge to the time limits specified in § 222.06(1), *Fla.*

---

er labor performed on the realty, the following property owned by the head of a family: (1) a homestead, ... if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family; ...

4. This statute provides:
Whenever a levy is made upon the lands, tenements, mobile home, or modular home of such head of a family whose homestead has not been set apart and selected, such person, his agent or attorney, may in writing notify the officer making such levy, by notice under oath made before any officer of this state duly authorized to administer the same, at any time before the day appointed for the sale thereof, of what he regards as his homestead, with a description thereof, and the remainder only shall be subject to sale under such levy.

*Stat.* (1979) [5], for assertion of the personal property homestead exemption, Art. X, § 4(a)(2), *Fla.Const.* In upholding the requirement of filing an affidavit within ten (10) days from the date of levy, the Court held that the statute does not violate due process of law or equal protection guarantees because it bears a reasonable relationship to a permissible legislative objective, the establishment of procedure whereby an individual will be afforded an opportunity to assert a right to a personal property exemption while at the same time providing an orderly mechanism for the holding of a Sheriff's Sale.

The Court agrees with plaintiff's arguments that the *Johns* case is distinguishable from the case at bar. *Johns* involved personal property exemption rights while this case concerns real property homestead rights. A separate procedural statute was enacted to cover the assertion of real property homestead claims, § 222.02, *Fla.Stat.*, and the cases construing this provision control.

Another significant point of difference is that § 222.06, *Fla.Stat.* (1979) was amended by the Florida legislature in 1979. The issue in *Johns* was whether the amendment adding the time limits for assertion of exemption rights was valid. The real property exemption implementation statute, on the other hand, has only been amended once since its enactment in 1869, and that was to expand its coverage to include protection of mobile homes. *See* ch. 1715, § 2, 1869 Fla. Laws 20 and ch. 77–299, § 3 (1977). In addition, since § 222.02, *Fla.Stat.* was first enacted, the Florida Supreme Court has ruled on numerous occasions that this provision is not the exclusive method of asserting

real property exemption rights and that these rights cannot be waived even though the statute is not followed. *See, Baker v. State, supra, Albritton v. State, supra,* and *Fidelity & Casualty Co. of New York v. Magwood, supra.*

■ The failure of the legislature to significantly amend § 222.02, *Fla.Stat.* after it was broadened by the Florida courts amounts to legislative acceptance of the subsequent court construction. *White v. Johnson,* 59 So.2d 532, 533 (Fla.1952); *Johnson v. State,* 91 So.2d 185, 187 (Fla.1957). As stated in *Johnson,* "contemporaneous construction and long acquiescence in a particular construction are entitled to great weight." *Id.* at 187. Because of the Florida Supreme Court's contemporaneous construction stated in 1869 in *Baker v. State, supra,* and restated in 1917 in *Albritton v. State,* that the constitutional homestead provisions are operative notwithstanding the failure to comply with § 222.02, *Fla. Stat.,* the court concludes that plaintiff is not barred by her failure to set apart her homestead prior to levy from claiming her property as exempt in this bankruptcy proceeding.

## II. THE TRANSFER IS AVOIDED PURSUANT TO § 522(h)

Plaintiff is seeking to avoid the transfer of her homestead pursuant to § 522(h) in this adversary proceeding. This section of the Bankruptcy Code provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section of the trustee had avoided such transfer, if—

---

**5.** This statute was sunsetted by the Florida legislature on July 1, 1980, and is no longer in effect. It provided:

> When a levy is made by writ of execution, writ of attachment, or writ of garnishment upon any personal property, money, choses in action, or other property of a personal nature which may be exempt from levy and sale by any process upon which levy shall have been made, the debtor, if he wishes to claim such property as exempt from sale, as aforesaid, shall make or cause to be made,

> within 10 days from the date of the levy, an inventory of the whole of his personal property, affixing thereto true and correct cash valuations thereof; shall attach to such inventory an affidavit made by himself or his attorney or authorized agent that the inventory contains a true and correct list or schedule of all the personal property owned by him in this state, and the true cash value thereof; and shall in such schedule designate which property he claims to be exempt or wishes to have set aside as his exemption.

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

Subsection (g)(1) of § 522 allows the debtor to exempt property that the trustee recovers to the extent that the debtor could have exempted the property absent the transfer provided the transfer is involuntary and the property is not concealed.

Plaintiff has complied with the provisions of § 522(h) since the levy and sale of her homestead was an involuntary transfer of nonconcealed property which could have been exempted under § 522(b) [6] had it not been transferred, the trustee has the power to avoid the sale as a preferential transfer pursuant to § 547 and as a fraudulent transfer pursuant to § 548, and the trustee never attempted to avoid the transfer.

### A. *Preferential Transfer*

■ The Court finds that the levy and sale of plaintiff's homestead constitutes a preference as defined by § 547. This section of the Code provides that the trustee may avoid any transfer of property of the debtor 1) to or for the benefit of a creditor; 2) for or on account of an antecedent debt owed by the debtor before the transfer was made; 3) made while the debtor was insolvent; 4) within ninety (90) days before the filing of the petition and; 5) that enables the creditor to receive more than it would receive if the case was a Chapter 7 case, the transfer had not been made and the creditor received payment for the debt as provided in the Code.

Defendant disputes that the transfer of plaintiff's property is a preference, arguing that plaintiff was not insolvent when the transfer was made, the transfer was not made within the required ninety (90) days prior to the filing of the petition and defendant AMERICAN CONSUMER failed to

receive more by the transfer than it would have received had the transfer not occurred. Defendant's arguments, however, are based on the erroneous assumption that plaintiff is not entitled to exempt her property in this bankruptcy proceeding.

■ Because the Court finds the transferred property is exempt, the requirement of insolvency as defined by § 101(26) has been met. This provision defines insolvent with reference to an entity other than a partnership as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation," *exclusive* of property exempted pursuant to § 522. Since all of plaintiff's property is exempt, both real and personal, and since plaintiff's debts as listed on her schedules total $10,977.77, the plaintiff was insolvent when her property was transferred.

■■ The transfer of plaintiff's homestead was also made within ninety (90) days of the filing of her petition. The transfer is deemed to have been made when the lien attached to plaintiff's property, a question controlled by Florida law. *In re Vero Cooling & Heating, Inc.*, 11 B.R. 359 (Bkrtcy., S.D.Fla.1981). Florida law provides that a judgment becomes a lien on real property when a certified copy of it is recorded in the official records of the county. § 55.10, *Fla. Stat.* In this case, the certified copy of the Final Judgment obtained by defendant AMERICAN CONSUMER was recorded in the official records of Duval County on February 27, 1981. However, the *Florida Constitution* provides in Article X, § 4(a) that no judgment, decree or execution shall be a lien on homestead property. The Third District Court of Appeal of Florida held in *Bendl v. Bendl*, 246 So.2d 574, 577 (Fla. 3d DCA 1971) that a certified copy of a judgment recorded in compliance with § 55.10, *Fla.Stat.* is not a lien on real property exempt from forced sale as homestead pursuant to Article X, § 4(a), of the *Florida Constitution*.

---

**6.** The plaintiff is entitled to exempt her homestead pursuant to the *Florida Constitution* by virtue of § 552(b).

Since the filing of a certified copy of the Final Judgment obtained by defendant AMERICAN CONSUMER did not create a lien which attached plaintiff's homestead, the transfer of the property did not occur until it was sold at the Sheriff's sale on June 5, 1981. The sale therefore took place within the required ninety (90) days before the filing of plaintiff's petition on July 31, 1981.

The final requirement of a preference outline in the Code is also met here because defendant AMERICAN CONSUMER received $1,212.77 more than it would have received had the transfer not occurred. This defendant would have received nothing in a Chapter 7 proceeding if the transfer had not been made because all of plaintiff's property is exempt and because the trustee filed a Report of No Distribution in this case on September 8, 1981.

Bankruptcy cases construing § 547 have permitted debtors to avoid transfers in cases with similar facts to the one at issue. In *Matter of Roberson*, 7 B.R. 34 (Bkrtcy., Idaho 1980), the United States Bankruptcy Court for the District of Idaho held that a preference can occur where the property transferred is either exempt in the bankruptcy proceeding or is abandoned. In *Roberson*, the debtors' motor vehicle was sold as the result of a Sheriff's Sale pursuant to a Writ of Execution. The debtors thereafter filed bankruptcy and claimed the vehicle as exempt. They further sought to set aside the Sheriff's Sale pursuant to 11 U.S.C. § 522(h) alleging the sale constituted a preferential transfer under 11 U.S.C. § 547. In holding that a preference may occur when property is sold at a sheriff's sale, the Court noted that the "Bankruptcy Reform Act of 1978 gives the debtor a new right to protect his exemptions from preferential transfers if the preferential transfer was involuntary and the debtor had not concealed the property." *Id.* at 36. Similarly, the United States Bankruptcy Court for the District of Delaware held in *In re Brengle*, 10 B.R. 360 (Bkrtcy.Del.1981) that wages deducted from the debtor's salary within ninety (90) days of the filing of the bankruptcy petition constituted a preferential transfer which the debtor can avoid pursuant to § 522(h).

The levy and sale of plaintiff's homestead constitutes a preferential transfer under § 547 of the Bankruptcy Code. Section 522(h) therefore empowers the plaintiff in this case to stand in the shoes of the trustee and avoid this preferential transfer of her exempt homestead property.

### B. Fraudulent Transfer

The Court also finds that plaintiff is entitled to avoid the levy and sale of her homestead as a fraudulent transfer under § 548. This provision provides in pertinent part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

   .     .     .     .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

   .     .     .     .

Plaintiff's homestead was sold for $1,212.77, a mere fraction of its stated value of $19,100.00. Since the Sheriff sold the exempt real property in question for considerably less than its reasonably equivalent value and while plaintiff was insolvent, the transfer constitutes a fraudulent transfer under the Code.

The United States Bankruptcy Court for the District of Nevada rescinded a nonjudicial foreclosure sale finding it to be a fraudulent transfer pursuant to § 548 in *In re Madrid*, 10 B.R. 795 (Bkrtcy., Nev.1981). In *Madrid*, the debtor's residence, valued between $380,000.00 and $400,000.00, was sold at a foreclosure sale for $256,000.00, between 64% and 67% of its value. The debtor subsequently filed a Chapter 11 bank-

ruptcy petition and sought to avoid the sale as a fraudulent transfer. The Bankruptcy Court avoided the transfer holding that the property sold for less than its reasonably equivalent value. In considering whether fair value was received, the court relied on the holding of the United States Court of Appeals for the Fifth Circuit in *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir. 1980) construing the fraudulent transfer provision of the former Bankruptcy Act. In *Durrett*, the Fifth Circuit held that $115,400.00 paid for property assessed at $200,000.00 or 57.7% of its value, is not a fair equivalent for the property, stating:

> We have been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack under Section 67(d) of the Act, which has approved the transfer for less than 70 percent of the market value of the property.

*Id.* at 203. *Cf. Abramson v. Lakewood Bank and Trust Co.*, 647 F.2d 547 (5th Cir. 1981).

The plaintiff's property was clearly not sold for its reasonably equivalent value. The transfer of plaintiff's property is therefore found to be fraudulent and is voided pursuant to § 522(h).

### III. THE LEVY AND SALE ARE VOIDED PURSUANT TO FLORIDA LAW

■ The United States Bankruptcy Court has exclusive jurisdiction over all property of the debtor, wherever located. 28 U.S.C. § 1471(e). This provision empowers the Bankruptcy Court to determine the pendant state claim asserted by plaintiff that the Sheriff's Sale of her property should be declared void pursuant to §§ 222.08 and 86.011, *Fla.Stat.*

Section 222.08, *Fla.Stat.*, gives the Florida circuit courts equity jurisdiction to order and decree the setting apart of homesteads. Florida circuit courts are also given the power to issue declaratory judgments in § 86.011, *Fla.Stat.*

Plaintiff's homestead is exempt pursuant to Art. X, § 4(a)(1), *Fla.Const.*, and the subsequent Sheriff's Sale is void because it violated her exemption rights. *See Albritton v. State, supra.* This Court therefore voids the levy and sale of plaintiff's exempt homestead property.[7]

### CONCLUSION

■ Based on the foregoing, the Court finds that plaintiff is entitled to avoid the transfer of her exempt homestead property pursuant to § 522(h) and to set aside the levy and sale pursuant to §§ 222.08 and 86.011, *Fla.Stat.*[8] The Court also finds that § 550(d)(1) requires that the defendant be repaid the $1,212.77 she paid for the property at the Sheriff's Sale, together with legal interest from that date totalling $121.28, in addition to the $852.31 paid in mortgage payments and $78.00 paid for homeowner's insurance. If payment of the $2,264.36 is not made within thirty (30) days, a lien in said amount shall be impressed on the property in favor of defendant.

---

**7.** Plaintiff also alleged in her Complaint that the levy and sale of her homestead was void or voidable because the interest of her husband, Eugene Smith, was never offered for sale in violation of Art. X, § 4(c), *Fla.Const.* Because the Court avoids the transfer and voids the levy and sale for the reasons previously stated, the Court will not address this argument.

**8.** Plaintiff also sought in her Complaint to avoid the judicial lien in her property held by the defendant AMERICAN CONSUMER pursuant to § 522(f)(1). Since the Court finds this defendant received the full value of its judgment at the Sheriff's Sale, thereby satisfying the Final Judgment it previously obtained against the plaintiff, there is no need to rule on this issue.