THE DANIA BANK v. WILSON & TOOMER FERTILIZER COM-
PANY, and PORT EVERGLADES ·CIGAR FACTORY, INC.

172 So. 476.
Opinion Filed February 4, 1937.

*McCune, Hiaasen & Fleming,* for Appellant;

*Beacham & Gaulden* and *Milam, McIlvaine & Milam,* for
Appellees.

BUFORD, J.—The appeal is from final decree in a suit to
foreclose a mortgage, the decree being in favor of the com-

plainant as to foreclosure of a certain lot described as follows, to-wit:

"Lot Six (6) in Block Three (3) of Dania Heights, being a subdivision of the North Half (N½) of the Southeast Quarter (SE¼) of the Northwest Quarter (NW¼) of Section 3, Township 51, South Range 42 East according to plat thereof recorded in Plat Book 3 at page 22 of the public records of Broward County, Florida, together with buildings situate thereon."

The Dania Bank, a banking corporation, was made a party defendant because it held a Sheriff's Deed to the property involved. Lawrence M. Taylor was made party defendant because he was the sole heir and the qualified and acting Administrator of the estate of F. G. Taylor, deceased. Mortgage was made and executed by Port Everglades Cigar Factory, Inc., on the first day of June, 1933. Port Everglades Cigar Factory, Inc., was defendant and the record showed that it acquired title under warranty deed executed by F. G. Taylor on the 21st day of April, 1932. At that time F. G. Taylor described himself in the warranty deed as a single man. The mortgage was given by Everglades Cigar Factory, Inc., to secure an indebtedness found to be due from F. G. Taylor to Wilson & Toomer Fertilizer Company, a corporation. The notes secured by the mortgage were endorsed by Lawrence M. Taylor and F. G. Taylor and one of the notes involved in the suit was endorsed by one C. H. Deshields. The defendant, The Dania Bank, filed answer and counterclaim in which it set up as defense that the deed from F. G. Taylor to Port Everglades Cigar Factory, Inc., conveyed no title because it was made in fraud of creditors without consideration and that Port Everglades Cigar Factory, Inc., was a dummy corporation organized for the purpose of taking title to lands

then resting in F. G. Taylor for the purpose of defrauding F. G. Taylor's creditors, and further that on the 12th day of June, 1928, F. G. Taylor being indebted to The Dania Bank by his promissory note under seal promised to pay to the order of The Dania Bank & Trust Company, now The Dania Bank, a banking corporation, the sum of $3,000.00, and further agreed that should it become necessary to collect said note through an attorney that he would pay all costs of collection, and to pay interest on the principal at the rate of 8% per annum from date until paid. That there remained the sum of $2,000.00 due on said note with interest from September 12, 1931, at the rate of 8%; that on January 4, 1932, F. G. Taylor by his promissory note under seal promised to pay The Dania Bank, a banking corporation, $80.00 on March 4, 1932, with interest at 8% from date, but that he did not pay the same. That on the 23rd day of September, 1933, F. G. Taylor departed this life, leaving Lawrence M. Taylor, his sole heir, and Lawrence M. Taylor became the duly qualified and acting Administrator of the estate of F. G. Taylor, deceased, but has not paid any part of the obligation aforesaid.

It is alleged that because of the nonpayment of the obligation The Dania Bank employed Counsel to collect the notes by institution of suit in the Circuit Court of Broward County, Florida, against the said F. G. Taylor. The suit was filed and is now pending. That upon institution of the suit the plaintiff therein, The Dania Bank, caused an attachment to be levied against the property above described, said levy having been made on the 23rd of June, 1932, and that the notice of said attachment was duly filed as required by law. By amendment to the counter claim at a later date, to-wit, May 24, 1934, it was alleged that after the death of the defendant, F. G. Taylor, suggestion of death was

filed and by appropriate proceedings the cause proceeded against Lawrence M. Taylor, individually, as sole heir at law of F. G. Taylor, deceased, and that final judgment was rendered in said cause in favor of the plaintiff therein, the Dania Bank, on the 19th day of December, 1933, said judgment being recorded in Circuit Court Minute Book 15, page 541, of the Records of Said County and being in the amount of $2,685.69 and costs taxed at $40.80; that thereafter execution was duly issued and levy made upon the property involved in the suit and other property. And after due notice said property was on the Rule Day in February, 1934, sold by the Sheriff of Broward County and at said sale the defendant, The Dania Bank, was the purchaser of said property. That said sale was duly reported and confirmed by the Court and Sheriff's Deed was executed and delivered to the Dania Bank, the deed bearing date of February 9, 1934, and being filed for record on the same date.

It is alleged that by reason of the levy of the attachment against the real estate of the property of F. G. Taylor, said levy being made on the 23rd day of June, 1932, and the notice of attachment having been duly filed as required by law, The Dania Bank acquired a lien upon the property described in said notice of levy of attachment which lien was prior to any lien of complainant accruing to it by reason of the notes and mortgage sought to be foreclosed.

It is further alleged that while the debts, which were the subject matter of the suit above referred to, of said F. G. Taylor, deceased, were past due and unpaid and that The Dania Bank had made numerous demands upon F. G. Taylor for payment and was threatening to institute suit against said F. G. Taylor, the said F. G. Taylor, with intention of defrauding the Bank out of its just demands,

executed and delivered to Port Everglades Cigar Factory, Inc., the deeds hereinbefore referred to.

After dilatory pleadings the complainant made reply to the counterclaim of the defendant, The Dania Bank, in which it set up the defense that the property hereinbefore described was at the time of the levy of attachment the homestead of F. G. Taylor; that F. G. Taylor was then the head of a family residing in the State of Florida and that he and his son and family were then and there actually dwelling and residing upon the property above described and that the property was not subject to sale under execution because of its homestead character; that the judgment of The Dania Bank never became a lien upon the said property and that the sale of same under execution and the purchase by The Dania Bank at Sheriff's Sale were null and void as against the claim of the complainant under its duly recorded mortgage.

The record shows that sometime prior to 1926 Mrs. Taylor, the wife of F. G. Taylor, died. After the death of the wife, the widower completed a house on the property hereinbefore described and after its completion F. G. Taylor and his son Lawrence and Lawrence's family moved into the house. They lived there together for a short while. Then Lawrence and his family moved to some place in the North. While they were living in the North the property was occupied by a man by the name of Reil and F. G. Taylor. Lawrence returned to Florida in 1929 at his father's request. Lawrence, with his family, moved into the home of his father and there maintained his home. The record shows that the father lived with Lawrence. The father paid no board and Lawrence paid no rent for the property. There was furniture in the house belonging to both. The burden was on the complainant in the court

below to show that the property was homestead property · at the time of the levy of attachment. It totally failed to ·make this showing. Lawrence was the head of the family and there is no evidence that he abdicated his position as head of his family in favor of his father.

We think that it is clear that the only question necessary for us to determine is whether or not the property here involved was affected with homestead character at the time of the levy of the attachment and that that question is definitely settled by opinion and judgment in the case of Whiddon v. Abbott, *et al.,* 124 Fla. 293, 168 Sou. 253, and cases there cited. The facts as we read the record are on all-fours with the facts as they existed in that case. Here there. was a husband, wife and one son who was married and had children. The property in question was never resided upon by F. G. Taylor and his wife but the house was completed after the death of Mrs. Taylor which occurred while the house was under construction. Soon after her death the son and his family moved away from Florida and remained away three years. If the property had acquired homestead character that homestead character ceased to exist when Mrs. Taylor died and certainly it may not be contended that it continued to retain such character after the son and his family had moved away to a Northern state and left the father who then had another man to move into the house with him. When Lawrence returned at his father's request he moved· into the house with his father for the purpose, as is shown by a preponderance of the evidence, of taking care of the father. There was no legal duty resting upon the father to take care of Lawrence and his family, though there might have been under the statute, Section 3954 R. G. S., 5873 C. G. L., a legal duty resting upon the son to make provision for the support of his

father. However, there is no evidence that warrants the conclusion that F. G. Taylor was unable to support himself.

In Whidden v. Abbott, *supra,* we quoted from Johns v. Bowden, *et al.,* 68 Fla. 32, 66 Sou. 155, defining what is necessary to constitute a head of a family under provisions of Section 1, Article X, of our Constitution, and said:

"To constitute a 'head of a family' there must be at least two persons who live together in the relation of one family, and one of them be 'the head' of that 'family.' When the natural relation of husband and wife or parent and child, or that of being *in loco parentis* does not exist the relation should be one in which an established and continuing personal authority, responsibility and obligation actually rests upon one as 'the head of a family' for the welfare of the others who in law should or in fact do recognize and observe a family relation to the one as 'the head of a family.' "

There is no showing in this record that F. G. Taylor exercised any established and continual personal authority, responsibility and obligation for Lawrence M. Taylor and his family at any time after Lawrence and his family returned from the North, nor is it shown that he was ever recognized by Lawrence M. Taylor, Lawrence M. Taylor's wife or any member of Lawrence M. Taylor's family, as the head of the family residing in that household. This is a stronger case against the claim of homestead exemption than was the case of Whidden v. Abbott. In the case of Whidden v. Abbott the son testified that he considered his father the head of the family but he failed to testify to such a state of facts as in law would constitute the father the head of the family as such as is contemplated by Section 1, Article X of our Constitution.

In this case the son, Lawrence M. Taylor, testified positively that he himself remained the head of his family,

that his father never assumed that position, that he never assumed personal authority over the family of Lawrence M. Taylor; that he never assumed or exercised any responsibility or obligation as the head of that family. Mrs. Lawrence M. Taylor testified to the same state of facts and their testimony is strongly corroborated by other testimony in the record.

The appellee has devoted much space in the brief to adverse criticism of Lawrence M. Taylor, all of which is of no interest to us. Stress is laid upon the fact that F. G. Taylor directed the performance of the work that was carried on by F. G. and Lawrence M. Taylor and that he also drove his automobile about as he saw fit without adhering to the wishes of Mrs. Taylor in that regard and that Mrs. Taylor generally did the things that F. G. Taylor requested her to do. There is nothing in all this inconsistent with the testimony that Lawrence M. Taylor continued at all times to occupy the position of head of his family and that he never abdicated that position in favor of his father. We must bear in mind that there is a vast distinction between the position of head of a family domiciled in a home on one hand and the boss of what goes on in the way of business for the earning of a livelihood on the other hand, or in other words a business manager. In this case there is ample evidence to show that F. G. Taylor during his lifetime was the dominant business manager of the affairs of himself and his son, Lawrence M. Taylor, but there could be but one head of a family under our homestead provision of the Constitution and without clear and convincing evidence that Lawrence M. Taylor abdicated the position as head of the family which the law cast upon him, the court has no right to assume that that position was usurped by another. It is immaterial to us whether Lawrence M. Tay-

lor was a highly respected, frugal, worthwhile citizen or was a ne'er-do-well and unworthy of confidence. The question before us is one of law which must be resolved adversely to the contentions of the appellee and in harmony with the contentions of the appellant.

For the reasons stated, the decree, insofar as it holds and adjudicates the property hereinbefore described to have been the homestead exempt from levy of execution at the time the levy of attachment was made, must be reversed and the cause remanded for the entry of a decree not inconsistent with the views herein expressed.

It is so ordered.

Reversed and remanded.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN and DAVIS, J. J., concur.