55 So.2d 907 (1950)
BRADY et al.
v.
BRADY et al.
Supreme Court of Florida, Division B.
December 22, 1950.
On Rehearing Special December 4, 1951.
Rehearing Denied January 21, 1952.
John D. Shepard and Shepard & Dykes, all of Cocoa, for appellants.
Russell Snow and Lloyd Campbell, Cocoa, for appellees.
On Rehearing Special Division A. December 4, 1951.
PER CURIAM.
Affirmed.
*908 ADAMS, C.J., and CHAPMAN, SEBRING and HOBSON, JJ., concur.

On Rehearing
HOBSON, Justice.
We have reconsidered this case in light of the petition for rehearing which was filed by appellants and have concluded that we should cleave to our original judgment of affirmance.
The real question in this case is whether the family relationship of father and son, which had existed from the death of the wife and mother, continued to exist until the death of the father in the face of the intervening facts and circumstances disclosed by the record. The subject property patently constituted a homestead from the death of the mother until some time after the marriage of the son Robert Converse Brady. The mere fact that the son married did not operate to dissolve the family relationship of father and son theretofore existing. However, the evidence in this case established facts which distinguish it from the case of Hillsborough Investment Co. v. Wilcox, 152 Fla. 889, 13 So.2d 448. In the instant suit the testimony showed that Robert Converse Brady, who is an able-bodied man, supported and actually assumed the responsibilities as head of his own family consisting originally of himself and his wife and subsequently of himself, his wife and their two children. In the Hillsborough Investment Co. case the son was a disabled veteran and in many ways was dependent upon the ministrations and assistance of his mother who paid most of the household expenses.
In this suit it was made to appear that although Robert Converse Brady prior to the creation of their partnership worked for his father, he worked thereafter as a member or employee of the partnership as by the terms of each partnership agreement he was required to do. He used his own earnings to maintain his wife and children. He looked after his father's property, part of which was deeded to the son by the father at the time of the formation of the first partnership which was many years prior to the latter's death and, in fact, took over practically all of the duties, responsibilities and prerogatives of the head of a family. In a situation such as this wherein the son became the head of his own family we are not constrained to hold that he could at the same time continue to be a member of his father's family of which the father might be said to be the head. Although the following cases are distinguishable factually, they do recognize the impropriety of approving such inconsistency. Whidden v. Abbott, 124 Fla. 293, 168 So. 253; Dania Bank v. Wilson & Toomer Fertilizer Company, 127 Fla. 45, 172 So. 476; Shambow v. Shambow, 153 Fla. 760, 15 So.2d 836. See also Morgan v. Cunningham, 109 Wash. 105, 186 P. 309.
Appellants lay great stress upon the fact that the father continued to sit at the head of the dining table and to either say grace himself or request someone else to offer thanks. Our reaction to this circumstance is that the recognition by the son of this courtesy to his father was normal and praiseworthy, but it does not overcome the evidence which the Chancellor believed and which showed a dissolution of the family relationship of father and son and the establishment of the son as the head of his own family. In the last few years of the father's life he did little more than sit at the head of the table, water the grass and occasionally ride with the son out to the grove properties which then were owned by the father and son as tenants in common.
We do not mean to hold that once a homestead is established it ceases to exist when, as in this case, one of the two members constituting the family, who is not the head of such family, marries and brings his wife into the home. The homestead character of the property ceased to exist in this case sometime after the son married and when he in fact became the head of his own family and his wife took over the normal duties of the "woman of the house."
Each case of the character of the one now before us must be determined upon its own individual facts and circumstances. No inexorable rule exists which can be applied indiscriminately. Hillsborough Investment Co. v. Wilcox, supra; DeCottes *909 et al. v. Clarkson, 43 Fla. 1, 29 So. 442; Jetton Lumber Co. v. Hall, 67 Fla. 61, 64 So. 440, 51 L.R.A.,N.S., 1121; Anderson v. Anderson, Fla., 44 So.2d 652. A disabled veteran, a sick or invalid child or one who for any cogent reason continues wholly or partially to depend upon a parent who by dint of circumstance feels morally, if not legally, obligated to assume personal authority, responsibility and obligation for the welfare of such child, presents an entirely different picture from the one limned herein. This record shows that the son was capable and industrious and though in the beginning he did some work for his father, he earned his own living, supported his wife and children and assumed the responsibilities and authority of husband and father.
We do not consider the ratio decidendi of Dania Bank v. Wilson & Toomer Fertilizer Company, supra, or of Cumberland & Liberty Mills et al. v. Keggin, 139 Fla. 133, 190 So. 492, controlling in the instant suit. The facts and circumstances depicted by the record herein place this cause in a figurative "no-man's land" of Florida jurisprudence at a point somewhere between the positions occupied therein by the last mentioned cases.
In the case at bar, although the son Robert Converse Brady remained on the subject property with the father and brought his wife to the father's home to reside, the evidence is clear that the son assumed the position of head of his own family. From the evidence as a whole it was not unreasonable or erroneous for the Chancellor to conclude that neither the father nor the son, after the partnership agreement, regarded the son and his family "as being of the family of the father." The proof also shows that the family relationship which existed between the father and son was dissolved subsequent to the son's marriage and some years prior to the father's final summons. The appropriate time for determination of family headship in a case of this type, is at the death of the father. The evidence abundantly supports the conclusion that before the father's death he ceased to be the head of a family.
Furthermore, the able Chancellor, in person, heard the witnesses in this equity case, evaluated the evidence and determined the pivotal question in favor of the appellees. He found that the father, Louis Albin Brady, was not at the time of his death the head of a family consisting of himself and his son or of himself, his son, his son's wife and his two grandchildren. We find in the transcript substantial evidence which sustains the ruling made by the learned Chancellor.
We adhere to our Per Curiam opinion in which we affirmed the final decree from which this appeal was prosecuted.
SEBRING, C.J., and TERRELL and CHAPMAN, JJ., concur.