531 So.2d 946 (1988)
PUBLIC HEALTH TRUST OF DADE COUNTY, Petitioner,
v.
Jorge LOPEZ, Respondent.
In re the ESTATE OF Helen V. TAYLOR, Deceased.
Mary Helen HINES and Cynthia Whidden, As Personal Representatives of the Estate of Helen V. Taylor, Deceased, Petitioners,
v.
GESSLER CLINIC, P.A., and Winter Haven Hospital, Respondents.
Nos. 70968, 71618.
Supreme Court of Florida.
June 9, 1988.
Rehearing Denied August 30, 1988.
Robert A. Ginsburg, Dade County Atty., and Shepard J. Nevel, Asst. County Atty., Miami, for Public Health Trust of Dade County.
John W. Frost, II and Hank B. Campbell of Frost & Purcell, P.A., Bartow, and Andrew P. Trakas of Andrew P. Trakas, P.A., *947 Winter Haven, for Mary Helen Hines and Cynthia Whidden.
Gerald Forman of Gerald Forman, P.A., Miami, for Jorge Lopez.
Rex P. Cowan of Kalogridis & Cowan, Winter Haven, for Gessler Clinic, P.A., and Winter Haven Hosp.
BARKETT, Justice.
We review the conflicting decisions of Lopez v. Public Health Trust of Dade County, 509 So.2d 1286 (Fla. 3d DCA 1987), and In re Estate of Taylor, 516 So.2d 322 (Fla. 2d DCA 1987). In so doing, we answer in the affirmative the following question posed in Lopez:
Whether article X, section 4 of the Constitution of Florida, as amended, serves to exempt a decedent's homestead property from forced sale for the benefit of the decedent's creditors, where the decedent is not survived by a dependent spouse or children?[1]
We have jurisdiction. Art. V, §§ 3(b)(3) and (4), Fla. Const.
The principal facts are not in dispute. In Lopez, the decedent homeowner, Nereida Lopez, at the time of her death, was residing in the home with her three adult children. The decedent's personal representatives petitioned the probate court to have the property set aside as homestead under article X, section 4 of the Florida Constitution.[2] The petition was opposed by Public Health Trust, to whom the decedent was indebted. The trial court denied the petition based upon its finding that the decedent's heirs, her three adult children, were not dependent on her at the time of her death.
Similarly, in Hines, the homeowner, Helen Taylor, at the time of her death, was single and residing in the home she had acquired from her divorced husband. She died intestate, survived by four adult, nondependent children who lived elsewhere. Here, too, the probate court denied the personal representatives' petition to have the home set aside as exempt from the decedent's creditors, Gessler Clinic and Winter Haven Hospital.
On appeal, the Third District reversed in Lopez, concluding that the homestead exemption inures to the benefit of the decedent's heirs whether or not the heirs were dependent on the decedent. Conversely, in Hines, the Second District affirmed the lower court, holding that the residence of a single person who is not survived by a spouse or dependent family members is not exempt from the decedent's creditors.
On this appeal, Public Health Trust, Gessler Clinic, and Winter Haven Hospital ("creditors") argue that article X, section 4(b), extending the homestead exemption to the "surviving spouse or heirs of the owner," must be construed to apply only to minor or dependent heirs. To support this interpretation, the creditors assert that under prior case law,[3] Florida's homestead exemption was not available to adult heirs of a decedent unless the heirs had been *948 dependent on the decedent. They point to the history of the 1985 amendment as evidence that the legislature never intended to eliminate this requirement. The creditors also argue that a literal interpretation of section 4(b) would provide a windfall for financially independent heirs at the expense of the decedent's creditors, distorting the historical purpose of homestead laws to protect dependents in need of shelter.
In addition, Public Health Trust questions whether the amended provision protects the homes of all single persons and suggests that it applies only to those single persons who are surviving widows or divorced parents.
The personal representatives, on the other hand, argue that the language of the homestead exemption is clear and unambiguous; that the cases relied upon by the creditors are inapposite; and that the precise question presented already has been answered in their favor in Miller v. Finegan, 26 Fla. 29, 7 So. 140 (1890); Scull v. Beatty, 27 Fla. 426, 9 So. 4 (1891); and Cumberland & Liberty Mills v. Keggin, 139 Fla. 133, 190 So. 492 (1939).
For the reasons advanced by the personal representatives, we reject the creditors' position. For over a century, Florida has by constitutional provision made the homeplace exempt from the claims of creditors. See Baker v. State, 17 Fla. 406 (1879) (construing homestead provision of the Florida Constitution of 1868). As a matter of public policy, the purpose of the homestead exemption is to promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors who have given credit under such law. See Bigelow v. Dunphe, 143 Fla. 603, 197 So. 328 (1940).
Until 1985, the homestead protection was limited to those persons who qualified under the constitutionally designated term "head of a family." See art. X, § 4, Fla. Const. (1983). In 1984, however, the people of Florida approved an amendment changing the term "head of a family" to "a natural person." The amendment thus expanded the class of persons who can take advantage of the homestead provision and its protections.
As an initial matter, we reject Public Health Trust's suggestion that "natural person," when applied to single persons, means only widows and divorced parents. Such an interpretation is contrary to the language, logic and history of the amendment. As Representative Hawkins, who sponsored the amendment in the House of Representatives, explained, the purpose of the revision was "to give protection against forced sale for the homestead of a single person, a divorced person, any person who has a homestead, rather than just a head of a family." House Judiciary Full Committee Meeting, March 29, 1983.
The 1985 amendment thus made the homestead protection available to any natural person. Accordingly, the property and residences in question clearly fit within the definition of "homestead" under section 4(a)(1), as amended.
We turn then to the principal issue before us, the meaning and application of article X, section 4(b). The language of this provision is indeed plain and unambiguous. As the district court in Lopez noted:
The amended section serves to exempt all homestead property from forced sale for the benefit of the decedent's heirs, regardless of whether the decedent was the head of a household prior to his or her death. As such, whether the decedent had dependent heirs at the time of her death is immaterial under the new amendment. Once it was established that the decedent owned and resided in the property at the time of her death, her estate was entitled to have the property set aside as homestead.
509 So.2d at 1286-87 (citations omitted).
As the creditors themselves point out, legislative intent controls construction of statutes in Florida.[4] Moreover, "that intent *949 is determined primarily from the language of the statute [and]... [t]he plain meaning of the statutory language is the first consideration." St. Petersburg Bank and Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla. 1982) (citation omitted). This Court consistently has adhered to the plain meaning rule in applying statutory and constitutional provisions. See Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984); Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879, 882 (Fla. 1983); Carson v. Miller, 370 So.2d 10, 11 (Fla. 1979); State ex rel. West v. Gray, 74 So.2d 114, 116 (Fla. 1954); Wilson v. Crews, 160 Fla. 169, 175, 34 So.2d 114, 118 (1948); City of Jacksonville v. Continental Can Co., 113 Fla. 168, 171-73, 151 So. 488, 489-90 (1933); Van Pelt v. Hilliard, 75 Fla. 792, 798, 78 So. 693, 694 (1918). As we recently explained:
Florida case law contains a plethora of rules and extrinsic aids to guide courts in their efforts to discern legislative intent from ambiguously worded statutes. However, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." It has also been accurately stated that courts of this state are "without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power."
Holly, 450 So.2d at 219 (citations omitted, emphasis added).
The constitutional provision at issue is clear, reasonable and logical in its operation. Section 4(b) states, without any qualification, that the benefits "inure to the surviving spouse or heirs of the owner." There are no words suggesting that the heirs or surviving spouse had to have been dependent on the homeowner to enjoy this protection. Consequently, the creditors are not asking us merely to construe or interpret the amendment but rather to graft onto it something that is not there. This we cannot do. We are not permitted to attribute to the legislature an intent beyond that expressed, see Bill Smith, Inc. v. Cox, 166 So.2d 497, 498 (Fla. 2d DCA 1964), or to speculate about what should have been intended. Tropical Coach Line v. Carter, 121 So.2d 779, 782 (1960). Nor may we insert words or phrases in a constitutional provision, or supply an omission that was not in the minds of the people when the law was enacted. See Brooks v. Anastasia Mosquito Control Dist., 148 So.2d 64, 66 (Fla. 1st DCA 1963). The legislature, and in this case, the people who adopted the amendment, must be held to have intended what was so plainly expressed.
We are fortified in our conclusion by the legislative history of the amendment. We have examined the materials submitted by the parties and find nothing in them even remotely suggesting that the legislature intended "surviving spouse or heirs" to mean "dependent spouse or heirs." Nor can we say that the people of Florida had any such limitation in mind. The Ballot Summary upon which the people voted said:
EXEMPTION OF HOMESTEAD AND PERSONAL PROPERTY FROM FORCED SALE  Provides that the exemption of a homestead and of personal property to the value of $1,000 from forced sale and certain liens shall extend to any natural person, not just head of a family.
We conclude that neither the language nor the legislative history of the amendment supports the creditors' position.
Nor does prior case law. Contrary to the creditors' assertion, homestead property always has descended to the heirs free of creditor's liens without regard to whether the heirs were dependents.
The creditors have confused the issue by relying on cases that did not apply section 4(b), but only answered the threshold question of whether the property qualified as homestead. That threshold question required *950 a factual finding that the decedent, at the time of his death, had been, in the words of the old constitution, the "head of a family." That term was construed to mean someone who either had a legal duty of support arising out of a family relationship or lived with at least one other as a family and was regarded as the "head" of that "family." Whidden v. Abbott, 124 Fla. 293, 294-95, 168 So. 253, 254 (1936). In each case cited by the creditors, see supra n. 5, the court decided the owner was not the head of a family at the time of his death, and thus never reached the question of whether the property, had it been homestead, would have passed to the heirs exempt from the claims of the decedent's creditors. E.g., Brown, 156 So.2d at 686 (at time of Brown's death, property in question was not homestead property); In re Wilder's Estate, 240 So.2d 514 (Fla. 1st DCA 1970) (where son or daughter becomes head of his or her own family, that child not also considered member of parent's family of which parent is considered head).[5]
Miller and Scull, in contrast, are on all fours with the cases before us and we adhere to the reasoning there expressed. In Miller, the heirs were adults, and this Court stated:
This exemption is from liability for the debts of the ancestor, and it is given to whoever may be heirs without reference to whether they be infants or adults. No such condition is to be found in the Constitution, but according to its plain language and meaning, the heirs, if they be all adult, take the exemption with the land in the same way that infant heirs do.
... .
It may be said, however, that to permit adult heirs to enjoy the benefit of the exemption is inconsistent with the general idea or purpose of a homestead, and that this is more prominently so when such adults have not lived under the home roof and been a part of the family it protects. The answer to this is found in the very provision of the Constitution that the exemption shall accrue to the heirs of the party having enjoyed it. That property which creditors could not take from the head of the family when he was living, they cannot take from his heirs after his death. This is what the Constitution plainly said to any one who might become a creditor.
26 Fla. at 36-37, 7 So. at 142.
And in Scull, the Court again rejected the argument that the protection should not be extended to a homesteader's nonresident adult children, finding instead that homestead property accrues to the heirs without regard to their residence or ages. 27 Fla. at 436-37, 9 So. at 6 (1891). See also Cumberland & Liberty Mills, 139 Fla. 133, 190 So. 492 (1939) (where decedent head of family was survived by two adult sons, Court found exemption of father inured to adult heirs who were not dependents); Church v. Lee, 102 Fla. 478, 136 So. 242 (Fla. 1931) (homestead cannot lawfully be alienated by husband to wife, as it would still be the homestead and subject to inheritance by the owner's children, including adults as well as minors, whether or not they were living on homestead at the time of owner's death).
Lastly, we reject the creditors' argument that a literal interpretation of section 4(b) will provide a windfall for financially independent heirs at the expense of the just demands of creditors. Even if we were *951 free to ignore the plain language of the constitution, we would not be persuaded by this argument. The homestead protection has never been based upon principles of equity, see Bigelow, but always has been extended to the homesteader and, after his or her death, to the heirs whether the homestead was a twenty-two room mansion or a two-room hut and whether the heirs were rich or poor.
In sum, we conclude that the homestead exemption formerly only enjoyed by a head of a family can now be enjoyed by any natural person. The exemption continues after the homesteader's death without regard to whether the heirs were dependent on the homestead owner. Thus, the homestead descends directly to the spouse or heirs[6] free and clear of creditor's claims.
Accordingly, we approve Lopez but disapprove Hines and remand it to the Second District Court of Appeal for proceedings consistent with this opinion.
It is so ordered.
OVERTON, EHRLICH, SHAW and KOGAN, JJ., concur.
McDONALD, C.J., concurs in part and dissents in part with an opinion.
McDONALD, Chief Justice, concurring in part and dissenting in part.
I would approve both Lopez v. Public Health Trust of Dade County, 509 So.2d 1286 (Fla. 3d DCA 1987), and In re Estate of Taylor, 516 So.2d 322 (Fla. 2d DCA 1987). There is a critical factual distinction between these two cases. In Lopez the adult children lived with their mother. Her home was their principal place of abode and their home. In Taylor the children lived apart from their deceased mother. They had their own separate and distinct place of abode, did not share the home with their mother, and did not claim it to be their home.
The reasoning of the majority opinion, and its interpretation of article X, section 4(a)(2), (b), Florida Constitution, is sound and within the intent of the 1984 amendment to protect the home, when it is a home, from creditors. This Court, however, has always said that a person can claim but one homestead. If a party has a separate home it has all the protection of article X, section 4. Under these circumstances, however, there is no need, and no public purpose, for continuing to protect the house or property of one who dies leaving a house which is no longer a home for the children or heirs of the decedent.
I would therefore approve extending the protection of article X, section 4 to the property in Lopez, but disallow it as to the property in Taylor.
NOTES
[1] Certified by order of the district court dated July 14, 1987.
[2] Article X, section 4, as amended, provides in pertinent part:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family;
(2) personal property to the value of one thousand dollars.
(b) These exemptions shall inure to the surviving spouse or heirs of the owner. (Emphasis added.)
[3] E.g., Brown v. Hutch, 156 So.2d 683 (Fla. 2d DCA 1963), cert. denied, 162 So.2d 665 (Fla. 1964); Dania Bank v. Wilson & Toomer Fertilizer Co., 127 Fla. 45, 172 So. 476 (1937); Whidden v. Abbott, 124 Fla. 293, 168 So. 253 (1936); In re Wilder's Estate, 240 So.2d 514 (Fla. 1st DCA 1970); In re Noble's Estate, 73 So.2d 873 (Fla. 1954); Brady v. Brady, 55 So.2d 907 (Fla. 1950).
[4] The principles governing construction of statutes are generally applicable to the construction of constitutions. City of Jacksonville v. Continental Can Co., 113 Fla. 168, 171, 151 So. 488, 489 (1933); State ex rel. Moodie v. Bryan, 50 Fla. 293, 385, 39 So. 929, 958 (1905).
[5] Even under the former constitution, it was possible for an owner to be a homesteader without having persons financially dependent upon him. A homeowner was entitled to the exemption if there was family communal living on the property so long as the owner was "in charge" of the family unit. Holden v. Gardner's Estate, 420 So.2d 1082 (Fla. 1982); Whidden; Dania Bank. There was no inquiry as to the financial holdings of the family members so long as it was clear that the owner was "in charge." As both Whidden and Dania Bank make clear, the existence of head of family status was a legal question having to do with personal authority, not a factual question based upon who controlled the pursestrings. As this Court said in Dania Bank, 127 Fla. at 52, 172 So. at 479, "there is a vast distinction between the position of head of a family domiciled in a home on one hand and the boss of what goes on in the way of business for the earning of a livelihood on the other hand."
[6] The term "heirs" is defined by section 731.201(18), Florida Statutes (1985), as those persons entitled to the decedent's property under the statutes of intestate succession.