542 So.2d 1345 (1989)
R. Gene CAVANAUGH, Margaret M. Callahan, and Hansel Cavanaugh, Appellants,
v.
John R. CAVANAUGH, Appellee.
No. 88-74.
District Court of Appeal of Florida, First District.
April 21, 1989.
Rehearing Denied May 22, 1989.
*1346 Carl R. Pennington, Jr. and Cathi C. O'Halloran, of Pennington, Wilkinson & Dunlap, Tallahassee, for appellants.
Robert L. Hinkle and Elizabeth McArthur, of Aurell, Fons, Radey & Hinkle, Tallahassee, for appellee.

ON REHEARING
WIGGINTON, Judge.
Pursuant to appellants' motion for rehearing, we grant the motion and withdraw our earlier opinion in this cause, substituting the following opinion therefor.
This appeal involves the estate of John J. Cavanaugh which was probated beginning with a petition filed in 1977 and culminating in an order of final discharge entered *1347 June 5, 1979. The will devised real estate described as the "Cavanaugh dairy" to John J. Cavanaugh's surviving spouse, Annie Mae Cavanaugh, for life, remainder to his son, appellee, John R. Cavanaugh. It also designated appellee as personal representative. The instant action was commenced by the filing of a complaint by the three other children of John J. Cavanaugh  Gene Cavanaugh, Margaret M. Callahan, and Hansel Cavanaugh. Count I of the complaint was an action for an accounting. In Count II appellants sought to quiet title to the property devised to appellee on the grounds that such property had constituted John J. Cavanaugh's homestead. Following a non-jury trial, the court entered its order finding in favor of appellee determining that John J. Cavanaugh was not the "head of household" at the time of his death and that his property therefore was not homestead. We disagree with the trial court as to that finding as well as with appellee's alternative argument regarding the application of the doctrine of res judicata to bar appellants from collaterally attacking the original probate decree. However, we must remand the cause for further consideration of certain of appellee's other affirmative defenses raised below but not reached by the trial court.
Predictably, much of the testimony presented at the hearing was conflicting. Undisputed was the fact that John J. Cavanaugh emigrated to this country from Ireland as a young man and in 1912 married Annie Mae Russell in Leon County. Four children, appellants and appellee, were born of this marriage. In time, appellants each married and eventually moved away from their parents' home. However, appellee remained in his parents' home until their death.
The property in question was used for farming, grazing, and as a dairy, as well as the family residence. After his return home following World War II, appellee received some vocational training in agriculture and in 1946 entered into a farming "partnership" with his father. John J. Cavanaugh contributed the land, buildings, and his breeders, and appellee purchased some cows. However, in 1965 or 1966, the partnership abandoned the dairy business and for the next ten to twelve years was limited to beef cattle production.
The various tax returns entered into evidence reflect that appellee had negligible interest income until 1974. He testified that most of his subsequently reported interest income was from the proceeds of the condemnation of a portion of his father's land for the right of way of Interstate 10, which severs a portion of the property. In or about 1974, appellee's name was placed on the accounts containing such condemnation proceeds and the interest was allocated between appellee and his father for income tax purposes. John J. Cavanaugh's total adjusted gross income during 1971 to 1976 was $91,486.92. In comparison, appellee's total adjusted gross income for that same period was $13,858.57.
On August 24, 1954, John J. Cavanaugh executed a last will and testament devising, inter alia, his real property to his wife for life, remainder to appellee. At the time the will was executed, Cavanaugh was approximately seventy years old and all of his children were adults. By this point in time, and continuing thereafter, John J. Cavanaugh had made gifts of cash and property to appellants. However, he did not give any property to appellee during his life. At the time his will was drafted, Cavanaugh's attorney was of the impression that the property was not homestead and he therefore did not advise Cavanaugh concerning the homestead aspects of the attempted devise made in the will.
Over the years, Cavanaugh shifted more and more of the responsibilities of running the partnership to appellee and, for the last four years of his life, completely relinquished those responsibilities to appellee. He also eventually turned over to appellee the personal duties and responsibilities of running the household. Appellee paid the bills, was responsible for providing information to, as well as directing and overseeing the accountant and lawyer regarding tax and legal matters, saw to repairs, and generally assumed the obligation of seeing that the household operated as it should. *1348 Part of the reason for this shift of responsibility was due to the extensive health problems experienced by Cavanaugh in the last decade of his life, as well as to the fact that Cavanaugh simply did not want to shoulder those responsibilities any longer. By the time of his death, Cavanaugh's substantial health problems had created a 24-hour role for appellee as his father's primary care giver.
Apparently, Cavanaugh's attorney was led to believe by Mr. and Mrs. Cavanaugh that all of the family knew of and acquiesced in Cavanaugh's plan of distribution. Indeed, appellants did not contest that disposition until after Mrs. Cavanaugh died in 1984, and even thereafter, until appellee made known his plans in 1986 to marry for the first time. In written closing argument, appellants explained that they did not assert their interest in the disposition of their father's property until their mother had passed away because they did not want to upset her and because they were of the impression she had received all of the property. Their subsequent motivating concern was that the property might ultimately fall into the hands of appellee's fiance.
Following his death on March 24, 1977, Cavanaugh's will was filed with the court and proceedings were commenced by appellee and Cavanaugh's attorney. There was a conflict in the manner in which appellee, as personal representative, characterized the property in the pleadings. For example, in the "Motion to Modify Order," wherein appellee requested elimination of the personal representative's bond, appellee represented to the court that the property passed "by operation of law." However, the motion in addition states that the property passed by operation of law to the widow for and during her natural life, remainder to appellee "pursuant to decedent's will." Next, in the inventory, the property specifically was identified and referred to as "homestead property." However, the schedule of distribution submitted by appellee with the petition for discharge reflects the distribution under the will to Mrs. Cavanaugh for life, with the remainder to appellee. The petition for administration states that John J. Cavanaugh was also survived by a daughter and two other sons. The attorney testified that the characterization of the property as homestead was an unintentional mistake and did not indicate his belief that the property was homestead. The mistake was corrected in the final inventory which recharacterized the property at issue as an asset of the estate that would pass pursuant to the will.
All notices required to be given in regard to the probate estate were given and notice of probate was filed and published in the local newspaper. Because they were not beneficiaries under the will, appellants were entitled only to notice by publication.[1] Section 733.212, Fla. Stat. Appellant Hansel Cavanaugh admitted that he saw the notice several times but never inquired concerning it. Gene Cavanaugh signed an affidavit regarding property given to him by his father within three years preceding his father's death to the effect that the property had not been given in contemplation of death. That affidavit acknowledged that appellee was the beneficiary of "an interest in the farmland" under his father's will. Notwithstanding, appellants consistently testified that although on several occasions during the probate of their father's estate they had made inquiry of appellee as to the status of the probate proceedings, appellee repeatedly assured them that all was in order and that their mother received everything.
Based on the foregoing, in its order presently under review, the trial court found that
... at the time of his death, John J. Cavanaugh was 95 years of age and for a substantial time before his death was not physically able, and did not carry out the responsibilities normally associated with the head of a family. John J. Cavanaugh's age and physical incapacity required that duties and responsibilities normally performed by and associated *1349 with the head of a family be turned over to, and actually performed by, his son, John R. Cavanaugh. .. .
If the issue before the Court was whether John J. Cavanaugh was the head of a family at the time that he executed his Will some twenty-three years before his death, there would be no doubt that he was. However, the Court is obligated to consider the facts and circumstances as they existed at the time the decedent died, and it is clear that at that time John J. Cavanaugh was not head of a family, and therefore, real property owned by him, and on which he lived, was not homestead.
The issue raised on appeal, of course, is whether John J. Cavanaugh was head of the household for purposes of determining whether the property on which he resided at death was homestead under the meaning of article X, section 4, Florida Constitution, and section 732.401(1), Florida Statutes.[2]
Section 732.401(1) provides:
If not devised as permitted by law and the Florida Constitution, the homestead shall descend in the same manner as other intestate property; but if the decedent is survived by a spouse and lineal descendants, the surviving spouse shall take a life estate in the homestead, with a vested remainder to the lineal descendants in being at the time of the decedent's death.
Appellants argue that the property in the instant case was homestead improperly devised, and therefore should pass in accordance with section 732.401(1) to them in equal undivided shares. In re Estate of Finch, 401 So.2d 1308 (Fla. 1981). Specifically, appellants maintain the trial court improperly emphasized the physical infirmities of John J. Cavanaugh as being determinative of his status as the head of the household. They argue that in the period of time during which Cavanaugh was alleged to have suffered a decline in health, he remained the sole support for his wife and provided the bulk of the support for appellee from either farm income or interest income from the proceeds of the condemnation of the property.[3] In so arguing, appellants emphasize the fact that Cavanaugh was the head of the family in the sense that he had a legal duty to support his wife which arose out of a "family in law" relationship. Holden v. Estate of Gardner, 420 So.2d 1082 (Fla. 1982). Thus, they distinguish cases involving "families in fact" relied on by appellee below. For instance, the consideration of who is "in charge" pertains only when one attempts to base a claim of homestead on "family in fact," and, therefore, the holding in Brady v. Brady, 55 So.2d 907 (Fla. 1951), was that the homestead character of the property ceased to exist when the son became the head of his own family with the result that he could not at the same time continue to be a member of his father's family. Significantly, in Brady, unlike in the instant case, the father had no spouse who, with the father, could form a family in law.
Finally, appellants submit that the test employed by the trial court is impractical and arbitrary and, as a matter of policy, the homestead should not be subverted merely because an elderly or infirm parent needs or desires assistance in the management of his affairs in his later years. They conclude that where there is a family in law, giving rise to a legal duty of support, and where the property owner actually furnishes such support, homestead status should continue notwithstanding physical incapacity, absent a lawful alienation or abandonment of the property. We agree.
In determining whether a person is the head of a family, Florida courts have traditionally used a test which requires a showing of either:

*1350 (1) a legal duty to support which arises out of a family relationship, or (2) continuing communal living by at least two individuals under such circumstances that one is regarded as in charge.... While the former requirement looks to a "family in law," the latter looks to a "family in fact," which arises out of a moral obligation to support.
Holden v. Estate of Gardner, 420 So.2d at 1083. While we recognize that in Holden, "[w]hether an individual is a head of family is a question to be resolved on the facts of each case," id., we are of the firm opinion that the trial court in the instant case applied an improper analysis in evaluating John J. Cavanaugh's status as head of the household.
Where the circumstances show that a family in law exists, as in the instant case where John J. Cavanaugh was survived by his spouse, evidence merely showing that the decedent turned over the management of his home to another does not necessarily result in a relinquishment of the head of the household status. We can conceive of countless scenarios involving the elderly of this state leaning on others to manage the affairs of their home so as not to hold that that circumstance alone, in a twinkling, dissipates their status as head of the household.[4] The fact that Mrs. Cavanaugh was living and looked to Mr. Cavanaugh as her managed by their son, was here conclusive of a finding of a family in law with a concomitant legal duty to support, and Cavanaugh's invalidism or illness did not establish abandonment of that status.
We are aware, to quote the trial court, that appellee "devoted himself to the care of his aged parents, accepted and carried out responsibilities as the head of the family to the exclusion of any independent personal life, and the establishment of a separate family of his own," but we are not willing to hold that simply because appellee performed the duties and responsibilities normally performed by and associated with the head of the family, he usurped his father's status to that effect. Accordingly, we conclude that the trial court erred in finding that the property was not homestead at the time of John J. Cavanaugh's death.
An alternative ground was raised by appellee below and now on appeal and concerns whether appellants' opportunity to assert the homestead status of the property devised by Cavanaugh was foreclosed by the probate of his estate. Appellee contends that the doctrine of res judicata bars appellants from essentially requesting the trial court to determine whether the property owned by Cavanaugh at the time of his death was homestead. Appellee maintains that this was precisely the same question which was included in and fundamental to the probate of the estate, and the fact that the status of the property was never addressed at length by the probate court did not alter the result for it was an issue that could have or should have been litigated and decided by the probate court. Thus, it was a justiciable issue, and "a final judgment by a court of competent jurisdiction is absolute and puts to rest every justiciable, as well as every actually litigated, issue." Albrecht v. State, 444 So.2d 8, 11-12 (Fla. 1984).
Continuing, appellee states that the parties necessary to determine the status of the property were the same in both actions and the evidence upon which the issue was determined was the same, regardless of whether the determination was made at the time of the probate of Cavanaugh's estate or presently. Therefore, the suit is barred pursuant to the maxim established in Pitts v. Pitts, 120 Fla. 363, 162 So. 708 (1935), that probate proceedings are in rem and binding on the whole world whether the judgment is erroneous or not.
Appellee relies heavily on the Florida Supreme Court's decision in In re Noble's Estate, 73 So.2d 873 (Fla. 1954), wherein it held that a probate court has the jurisdiction to consider and determine whether the property has the status of *1351 homestead as defined by the constitution. Appellee also depends upon the observation made by the supreme court in the more recent decision of DeWitt v. Duce, 408 So.2d 216 (Fla. 1981), that "`"[c]onsideration of public policy requires that all questions of succession to property be authoritatively settled."' ... The state's interest in an orderly succession of property can outweigh a party's equal protection or due process interest." Id. at 220-221.
Competing with appellee's position that homestead was a justiciable issue for res judicata purposes are the history and nature of homestead and the rights and exemptions inuring thereby to the persons entitled to it under article X, section 4, of the Constitution of Florida, and sections 732.401 and 732.4015, Florida Statutes. In circumstances such as the present, where the homestead is not devised as permitted by law and the constitution, and the decedent is survived by a spouse and lineal descendants, the homestead passes outside of the will and thereby outside of probate by virtue of section 732.401. As concerns the interest in or title to the homestead passing to the surviving spouse and lineal descendants, it has been said, "Neither executors nor administrators have at any time in this State had any jurisdiction over the homestead of a deceased person. The homestead is in no wise an asset of the estate of a decedent." Spitzer v. Branning, 135 Fla. 49, 184 So. 770, 772-773 (Fla. 1938); compare Burdick v. Burdick, 399 So.2d 410, 413 (Fla. 3d DCA 1981) (Nesbitt, J., specially concurring) (the homestead "was neither a probatable asset over which the personal representative had any right of possession nor did the probate court even have jurisdiction over it"). Indeed, it has been observed that no election is required of the beneficiary of a homestead right in order to obtain the benefit of it. Redfearn, Wills and Administration in Florida, 6th edition, § 18-8.
There are no provisions in the constitution or statutes which require an election to be made to take homestead in either testate or intestate property. The surviving spouse, regardless of whether the spouse died testate or intestate, takes the fee-simple title to the homestead if there are no lineal descendants; and, if there are lineal descendants, the surviving spouse takes a life estate in the homestead with vested remainder to the lineal descendants in being at the time of the death of the decedent. This vesting of the title to the homestead is fixed by statute, and no election is required of the beneficiaries of the homestead right in order to obtain the benefit of it.

Id. (footnote omitted) (emphasis added); see also rule 5.405, Fla.R.P. & G.P., allowing, but not mandating, that the personal representative or any interested person "may" file a petition to determine homestead.
Thus, while at the time Cavanaugh's estate was in probate the nature of the property may have been a potentially justiciable issue  in the sense, according to In re Noble's Estate, that the probate court had the jurisdiction to consider and determine whether the property was homestead  since neither Mrs. Cavanaugh nor appellants, as homestead beneficiaries under the statute, had a specific duty to seek a determination of the property as homestead before the probate court, we cannot say that the issue was truly "justiciable" for res judicata purposes.[5] The mere inclusion of the description of the homestead property in pleadings or orders in probate proceedings does not work to change the status of that property as homestead. Spitzer v. Branning; In re Estate of Donaldson, 147 So.2d 552 (Fla. 2d DCA 1962).
On the basis of the foregoing, we reject the application of appellee's res judicata argument to the instant case for the reason that, by its very nature, the homestead property was not a subject of the probate proceedings. Res judicata applies only *1352 "[w]here the second suit is upon the same cause of action and between the same parties as the first... ." Albrecht, 444 So.2d at 12. Here, the homestead benefit was not previously litigated or required to be litigated, but rather, inured to appellants and appellee by virtue of section 732.401(1). It must be remembered that the homestead law shall be liberally construed. Holden v. Estate of Gardner, 404 So.2d 1169, 1172 (Fla. 1st DCA 1981). By the very fact that appellants were not required to pursue a determination of homestead, their omission to do so did not automatically result in devolution of their title to the homestead to appellee by its passing through the will.[6]
We also disagree with appellee's position that appellants were parties during the probate proceedings in order to establish the second element of res judicata  identity of parties. Appellants were not actual parties to the proceedings and the fact of their merely being homestead beneficiaries by virtue of section 732.401(1) did not accord them party status "in the sense they can be held to have waived their position by not having sought adjudication or clarification of the matter during probate." Bourgeois v. Eberhart, 472 So.2d 1274, 1275 (Fla. 4th DCA 1985).
In so holding, we have not overlooked section 731.105, Florida Statutes, providing that "[p]robate proceedings are in rem proceedings," or the fact that the holding in Spitzer v. Branning, relied on by appellants, was predicated on the limited jurisdiction of a county judge sitting as a court of probate. Indeed, judgments in rem have been regarded as an exception to the rule of res judicata limiting the conclusiveness of a judgment to the parties to the proceeding. See 47 Am.Jur.2d Judgments § 1071. However, in Spitzer, the rule that in rem proceedings are binding on the whole world was defeated by virtue of the fact that the county judge sitting as a court of probate had no power to adjudicate rights or title in homestead, which power instead was vested in the circuit court exercising its general jurisdiction. In arguing against the application of Spitzer to the instant case, appellee points out that, effective January 1, 1976, jurisdiction under the Probate Code was transferred to the circuit court. See sections 731.011 and 731.201(6), Fla. Stat. Thus, according to appellee, since the homestead was before a court possessing general jurisdiction to try title, the exception in Spitzer is inapplicable and the probate order is binding on all the world, including appellants.
Again, we decline to agree with appellee. Although Spitzer predated the new Probate Code, the law set forth therein, generally, as to homestead property has not changed. We reiterate: the homestead was not an asset of the Cavanaugh estate to be devised and it thereby, in that sense, passed outside of probate. If, during the course of the administration, the trial court had been presented a petition indicating the estate consisted of no more than the homestead and exempt personal property, it could have ordered summary administration and the distribution of the estate according to statute, as well as the discharge of appellee as the personal representative. See sections 735.201 and 735.203, Fla. Stat.; Fla.R.P. & G.P. 5.530. However, it does not follow that because a petition was not presented the court was free to resolve title to the homestead in favor of appellee by devolution of the property through the will. There was no petition presented to set aside homestead, or complaint filed to quiet title or for the partition of the property. "Jurisdiction over property within [the court's] authority is acquired by the court after due filing of a complaint with exhibits having reference to the property that may be subjected to the processes of the court." 1 Fla.Jur.2d Actions § 12; 50 C.J.S. Judgments § 908. Were we to hold that title to the homestead could be divested merely by the beneficiary's failing to pursue the issue *1353 during probate despite there being no duty to do so, and absent any other pleadings relating to the homestead, our decision would constitute a most grievous and blatant disregard of due process rights.
Nonetheless, we hold that the policy consideration which was the basis of the decision in DeWitt v. Duce  that all questions of succession to property be authoritatively settled  should be as applicable to a homestead claim as to other collateral claims, whether grounded upon statutory prohibition or broader considerations. Our opinion reversing the trial court's decision that the property was not homestead and rejecting appellee's argument that res judicata applies would allow appellants to collaterally attack the probate judgment by asserting a homestead claim years after the probate judgment had become final. In this context, there is no controlling significance in the fact that appellants were not formally made parties to the probate litigation if they had actual knowledge of the proceeding, including notice that the specific property which they now claim as homestead was before the probate court for distribution, absent a showing of fraud or other circumstances preventing their participating in the probate proceeding and asserting a homestead claim.
The issue is thus presented whether the affirmative defenses of estoppel or laches  both raised by appellee below but not addressed by the trial court  would bar appellants from now pursuing a homestead claim in a collateral proceeding. The viability of these defenses depends, obviously, upon the weighing and considering of all facts and circumstances surrounding the controversy between the parties. This entails a determination, among other things, as to the extent of appellants' knowledge concerning the probate court's apparent assertion of jurisdiction to order distribution of the homestead property; the extent to which appellants' failure to act was influenced, if at all, by conduct or representations of appellee; the reasonableness of appellants' failure to act in light of all the circumstances; and the extent of the detriment to appellee, if any, occasioned by appellants' delayed assertion of their claim to the property. Since these are matters which must first be considered by the trial court, we find it necessary to remand this cause for further proceedings.
In sum, we reverse the trial court's order holding that the property was not homestead but find it necessary to remand the cause to allow the trial court to address the affirmative defenses of estoppel and laches. Additionally, should the trial court reject these defenses, it must then address the issue of whether parcels one and three of the property should be included in the description of the homestead.
REVERSED but REMANDED for further proceedings consistent with this opinion.
SMITH, C.J., concurs.
WENTWORTH, J., concurs with opinion.
WENTWORTH, Judge, concurring.
I concur in the majority's disposition of the case on rehearing. While recognizing that a homestead interest is created by operation of law, I would emphasize on remand that if appellants had knowledge or notice that the property was being distributed by the probate court, their failure then to place their homestead claim before the court should preclude their doing so after entry and reliance on the order of distribution.
A probate proceeding is an in rem action which, when properly commenced and noticed, becomes binding as to the resulting adjudication. See Pitts v. Pitts, 120 Fla. 363, 162 So. 708 (1935). The judgment of a probate court may authoritatively settle questions of succession to property (see DeWitt v. Duce, 408 So.2d 216 (Fla. 1981)), and a probate court has long been recognized to have jurisdiction to consider whether a decedent's property has the status of homestead. In re Noble's Estate, 73 So.2d 873 (Fla. 1954). As a result of such a determination the question of "how the title shall descend ... is consequential." Ibid. at 874.
Policy considerations as to the finality of judgments clearly should be applicable to a homestead claim as to other collateral claims. Spitzer v. Branning, 135 Fla. 49, 184 So. 770 (1938), was decided when probate *1354 proceedings were conducted by a county judge with limited jurisdiction. Probate proceedings are now conducted by the circuit court in accordance with sections 731.011 and 731.201(6), Florida Statutes. This change in the probate code, together with the supreme court's pronouncement in In Re Noble's Estate that the probate court has jurisdiction to address the homestead status of the decedent's property, limits the effect of Spitzer in the circumstances of this case.
I also agree that for the purpose of estoppel there would be no significance in the fact that appellants were not formally made parties to the probate litigation. The record and briefs on appeal indicate that they had statutory notice and actual knowledge of the proceeding, including notice that the specific property which they now claim as homestead was before the probate court for distribution. There was no showing of fraud or other circumstance preventing their participation in the probate proceeding and assertion of a homestead claim. If they declined to assert such a claim while aware that the probate court was addressing the distribution of the property, thereby allowing entry of and reliance on the probate judgment based upon non-homestead status of the property, appellants should now be estopped from pursuing a homestead claim in a collateral proceeding.
NOTES
[1] Although appellee testified that he nonetheless personally hand-delivered the petition for administration to appellants, appellants sharply disputed that account.
[2] Article X, section 4 provides in subparagraph (c) that "the homestead shall not be subject to devise if the owner is survived by a spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child."
[3] Appellants' testimony at trial was that their father had always been domineering and had remained so up until his death. Margaret summed it up by observing that before he died, their father was "strictly daddy. He done everything, and everybody done what he told them to do." [R. 239].
[4] This is not to say that circumstances involving legal incompetency and guardianship would not dissipate a head of household status. We do not have that issue before us.
[5] Indeed, at the time of the probate of Cavanaugh's estate, appellants maintain that they were of the impression the estate had passed in fee simple to their mother which would have been a proper devise under the constitution and section 732.4015. Thus, assuming that to be true, there would have been no reason for them to seek an adjudication of the homestead status of the property.
[6] The instant case may be contrasted with a post-probate action for wrongful interference with an inheritance grounded on fraud or undue influence as was involved in DeWitt v. Duce. In that case, not involving homestead, the supreme court held that section 733.103, Florida Statutes, barred such a collateral attack where the appellants, beneficiaries under the will, had an adequate remedy in probate with a fair opportunity to pursue it. Thus, in that sense, DeWitt is distinguishable from the instant case.